INTERNATIONAL HARVESTER COMPANY OF AMERICA *v.* COMMONWEALTH OF KENTUCKY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

Nos. 276, 291, 292. Argued April 23, 24, 1914.—Decided June 8, 1914.

An anti-trust criminal law may not necessarily be unconstitutional merely because it throws upon men the risk of rightly estimating what is an undue restraint of trade, but to compel a man to guess what the fair market value of commodities manufactured or sold by him would be under other than existing conditions is beyond constitutional limits.

The anti-trust provision of the constitution of 1891 and of the acts of 1900 and 1906 of Kentucky, as construed by the highest court of that State, are unconstitutional under the Fourteenth Amendment as offering no standard of conduct that it is possible to know in advance and comply with.

147 Kentucky, 564; Id. 795; 148 Kentucky, 572, reversed.

THE facts, which involve the constitutionality of anti-trust provisions of the constitution and laws of Kentucky, are stated in the opinion.

*Mr. Alexander Pope Humphrey* and *Mr. Edgar A. Bancroft,* with whom *Mr. Victor A. Remy* was on the brief, for plaintiff in error:

The construction placed on the anti-trust statutes by the instructions of the lower court violated the Fourteenth Amendment.

The anti-trust statutes as construed are void for indefiniteness. See act of May 20, 1890, §§ 3915 and 3917, Ky. Stat.; § 198, Kentucky Const.; Ky. Stat., p. 145;

acts of March 21, 1906, p. 429 (Ky. Stat., § 3941a), and March 13, 1908, p. 38 (Ky. Stat., § 3941a).

The Kentucky anti-trust law, as construed and enforced, denies equal protection of the law contrary to the Fourteenth Amendment.

The instructions of the lower court placed a construction on the Kentucky anti-trust law which conflicts with the Fourteenth Amendment. They, in effect, require superior articles to be sold at the same prices as inferior ones.

The Kentucky anti-trust statutes as construed by the Court of Appeals are so indefinite that they are void as criminal laws.

The Kentucky anti-trust statutes as construed and enforced deny equal protection of the law.

The history of the laws and the decisions show the above is true.

The fact that Kentucky is an agricultural State and the "Night Riding" movement tend to show the purpose of the acts.

The construction given the conflicting statutes gave only an apparent equality to manufacturers and merchants as compared to farmers.

As a matter of fact, the laws as construed and enforced, deny manufacturers and dealers equal protection.

The law itself must save the rights of parties, and they cannot be left to the discretion of the courts.

In support of these contentions, see *Am. Tobacco Co.* v. *Commonwealth,* 115 S. W. Rep. 754; *Collins* v. *Commonwealth,* 141 Kentucky, 565; *Commonwealth* v. *Bavarian Brewing Co.,* 112 Kentucky, 925, 928; *Commonwealth* v. *Grinstead,* 108 Kentucky, 59, 67, 76; *Commonwealth* v. *Hodges,* 137 Kentucky, 233; *Commonwealth* v. *Int. Harvester Co.,* 131 Kentucky, 551; *Commonwealth* v. *Int. Harvester Co.,* 131 Kentucky, 768; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 560; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79; *Equitable Society* v. *Common-*

*wealth,* 113 Kentucky, 126; *Ex parte Virginia,* 100 U. S. 339, 346; *Henderson* v. *Mayor,* 92 U. S. 259, 268; *Int. Harvester Co.* v. *Commonwealth,* 124 Kentucky, 543; 137 Kentucky, 668; 144 Kentucky, 403, 410; 147 Kentucky, 564; 147 Kentucky, 795; 148 Kentucky, 572; *L., H. & St. L. Ry. Co.* v. *Roberts,* 144 Kentucky, 820, 824; *Louisville Ry. Co.* v. *Stock Yards Co.,* 212 U. S. 133, 143; *Malone* v. *Commonwealth,* 141 Kentucky, 570; *Nash* v. *United States,* 229 U. S. 373, 377; *O'Bannion* v. *Commonwealth,* 113 S. W. Rep. 907; *Owen County Society* v. *Brumback,* 128 Kentucky, 137; *Robinson* v. *Van Houser,* 196 Fed. Rep. 620; *Steers* v. *United States,* 192 Fed. Rep. 1, 3, 6; *United States* v. *Brewer,* 139 U. S. 278, 288; *United States* v. *Sharp,* Peters' C. C. R. 118; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 373.

*Mr. James Garnett,* Attorney General of the Commonwealth of Kentucky, and *Mr. Charles Carroll,* with whom *Mr. Frank E. Daugherty, Mr. J. Robert Layman* and *Mr. J. R. Mallory* were on the brief, for defendant in error:

This court cannot review the evidence. *Dower* v. *Richard,* 151 U. S. 663, 664.

Weight must be given to construction of statutes and constitution, in state courts of last resort, by this court. *National Cotton Oil Co.* v. *Texas,* 197 U. S. 130; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 73.

As to the construction of constitution and acts by Kentucky's highest court, see *Commonwealth* v. *Int. Harvester Co.,* 131 Kentucky, 551; *Commonwealth* v. *Hodges,* 137 Kentucky, 233.

The standard adopted for determining whether or not there has been a violation of the Kentucky anti-trust law is fixed and certain. *Int. Harvester Co.* v. *Commonwealth,* 131 Kentucky, 576; 137 Kentucky, 677; 144 Kentucky, 410; 147 Kentucky, 564.

If the policy adopted by the Kentucky courts is reason-

able, this court will not review it. *Otis* v. *Parker,* 187 U. S. 47; *C., B. & Q. R. R.* v. *McGuire,* 219 U. S. 547; *McLean* v. *Arkansas,* 211 U. S. 539; *Hunter* v. *Pittsburg,* 207 U. S. 176. See Report of Committee of Senate of Kentucky, Feb. 21, 1910; § 198, Const. Kentucky.

The question as to instruction to jury was not raised in the Kentucky courts, and hence cannot avail here. *Dewey* v. *Des Moines,* 173 U. S. 199; *Bollin* v. *Nebraska,* 176 U. S. 90.

The Kentucky anti-trust statutes, as construed by the Court of Appeals, are not so indefinite as to render them void as criminal laws; nor do such statutes, as construed and enforced, deny the equal protection of the law. *Ex parte Virginia,* 100 U. S. 339, and *Yick Wo* v. *Hopkins,* 118 U. S. 356; *L. & N. R. R. Co.* v. *Central Stock Yards Co.,* 212 U. S. 133 have no application to this case.

MR. JUSTICE HOLMES delivered the opinion of the court.

The plaintiff in error was prosecuted, convicted and fined in three different counties for having entered into an agreement with other named companies for the purpose of controlling the price of harvesters, &c. manufactured by them and of enhancing it above their real value; and for having so fixed and enhanced the price, and for having sold their harvesters, &c. at a price in excess of their real value, in pursuance of the agreement alleged. The judgments were affirmed by the Court of Appeals. 147 Kentucky, 564. *Id.* 795. 148 Kentucky, 572. The plaintiff in error saved its rights under the Fourteenth Amendment and brought the cases here.

The law of Kentucky in its present form is the result of the construction of several statutes somewhat far apart in time and of seemingly contradictory import. It was argued that construction could not take the place of express language in a statute and *Louisville & Nashville*

*R. R. Co.* v. *Central Stock Yards Co.,* 212 U. S. 132, 144, was cited for the proposition. But the case gives no sanction to it. The point there was that a defect in a law could not be cured by precautions in a judgment, not that what seemed a defect could not be cured by the construction given to the words by the court having final authority to declare their intent. We follow the Kentucky Court of Appeals in taking what they derive from the legislation of the State as if it were embodied in a single act.

The history in brief is this: By an act of May 20, 1890, agreements for the purpose of fixing or limiting the amount or quantity of any article of merchandise to be produced or manufactured, mined, bought or sold; as also combinations by corporations with others to put the business of the combination under control with intent to limit, fix or change the price of articles of commerce or in any way to diminish the output of such articles, were made punishable by fine, imprisonment, or both. Carroll's Kentucky Statutes, §§ 3915, 3916, 3917. In 1891 a new constitution was adopted by the State, by § 198 of which it was made the duty of the General Assembly "from time to time, as necessity may require, to enact such laws as may be necessary to prevent all trusts . . . from combining to depreciate below its real value any article, or to enhance the cost of any article above its real value." (This was held not to repeal the earlier statute. *Commonwealth* v. *International Harvester Co.,* 131 Kentucky, 551, 566.) But Kentucky grows tobacco and the farmers were dissatisfied with the prices that they were able to get, being oppressed as they alleged by a combination of buyers. So, on March 21, 1906, a statute was enacted that made it lawful for any number of persons to combine the crops of wheat, tobacco, corn, oats, hay, or other farm products raised by them, for the purpose of obtaining a higher price than they could get by selling them separately. Session Laws, 1906, c. 117, p. 429. And later, by an act of

March 13, 1908 (Session Laws, 1908, c. 8, p. 38), not only was the legality of these last mentioned combinations reaffirmed, but they were protected by injunction, and the sale by or purchase from the owner contrary to his agreement was punished by a fine.

When the Court of Appeals came to deal with the act of 1890, the constitution of 1891, and the act of 1906, it reached the conclusion, which now may be regarded as the established construction of the three taken together, that by interaction and to avoid questions of constitutionality, they were to be taken to make any combination for the purpose of controlling prices lawful unless for the purpose or with the effect of fixing a price that was greater or less than the real value of the article. *Owen County Burley Tobacco Society* v. *Brumback*, 128 Kentucky, 137, 151. *Commonwealth* v. *International Harvester Co. of America*, 131 Kentucky, 551, 568, 571–573. *International Harvester Co. of America* v. *Commonwealth*, 137 Kentucky, 668. The result seems to be that combinations of tobacco growers are held to do no more than restore an equilibrium that has been disturbed by a combination of buyers, *Owen County Burley Tobacco Society* v. *Brumback*, 128 Kentucky, 137, 152; *Collins* v. *Commonwealth*, 141 Kentucky, 564, whereas if prices rise after a combination of manufacturers it very nearly is presumed that the advance is above the real value and that there is a crime. *International Harvester Co. of America* v. *Commonwealth*, 144 Kentucky, 403, 410, 411.

The plaintiff in error contends that the law as construed offers no standard of conduct that it is possible to know. To meet this, in the present and earlier cases the real value is declared to be 'its market value under fair competition, and under normal market conditions.' 147 Kentucky, 566. *Commonwealth* v. *International Harvester Co. of America*, 131 Kentucky, 551, 576. *International Harvester Co. of America* v. *Commonwealth*, 137

Kentucky, 668, 677, 678. We have to consider whether in application this is more than an illusory form of words, when nine years after it was incorporated, a combination invited by the law is required to guess at its peril what its product would have sold for if the combination had not existed and nothing else violently affecting values had occurred. It seems that since 1902 the price of the machinery sold by the plaintiff in error has risen from ten to fifteen per cent. The testimony on its behalf showed that meantime the cost of materials used had increased from 20 to 25 per cent. and labor 27½ per cent. Whatever doubt there may be about the exact figures we hardly suppose the fact of a rise to be denied. But in order to reach what is called the real value, a price from which all effects of the combination are to be eliminated, the plaintiff in error is told that it cannot avail itself of the rise in materials because it was able to get them cheaper through one of the subsidiary companies of the combination, and that the saving through the combination more than offset all the rise in cost.

This perhaps more plainly concerns the justice of the law in its bearing upon the plaintiff in error, when compared with its operation upon tobacco raisers who are said to have doubled or trebled their prices, than on the constitutional question proposed. But it also concerns that, for it shows how impossible it is to think away the principal facts of the case as it exists and say what would have been the price in an imaginary world. Value is the effect in exchange of the relative social desire for compared objects expressed in terms of a common denominator. It is a fact and generally is more or less easy to ascertain. But what it would be with such increase of a never extinguished competition as it might be guessed would have existed had the combination not been made, with exclusion of the actual effect of other abnormal influences, and, it would seem with exclusion also of any increased

efficiency in the machines but with inclusion of the effect of the combination so far as it was economically beneficial to itself and the community, is a problem that no human ingenuity could solve. The reason is not the general uncertainties of a jury trial but that the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect to the acutest commercial mind. The very community, the intensity of whose wish relatively to its other competing desires determines the price that it would give, has to be supposed differently organized and subject to other influences than those under which it acts. It is easy to put simple cases; but the one before us is at least as complex as we have supposed, and the law must be judged by it. In our opinion it cannot stand.

We regard this decision as consistent with *Nash* v. *United States*, 229 U. S. 373, 377, in which it was held that a criminal law is not unconstitutional merely because it throws upon men the risk of rightly estimating a matter of degree—what is an undue restraint of trade. That deals with the actual, not with an imaginary condition other than the facts. It goes no further than to recognize that, as with negligence, between the two extremes of the obviously illegal and the plainly lawful there is a gradual approach and that the complexity of life makes it impossible to draw a line in advance without an artificial simplification that would be unjust. The conditions are as permanent as anything human, and a great body of precedents on the civil side coupled with familiar practice make it comparatively easy for common sense to keep to what is safe. But if business is to go on, men must unite to do it and must sell their wares. To compel them to guess on peril of indictment what the community would have given for them if the continually changing conditions were other than they are, to an uncertain extent; to divine prophetically what the reaction of only partially deter-

minate facts would be upon the imaginations and desires of purchasers, is to exact gifts that mankind does not possess.

*Judgments reversed.*

MR. JUSTICE McKENNA and MR. JUSTICE PITNEY dissent.