SIMON GUGGENHEIM, DECEASED, OLGA H. GUGGENHEIM, FRANCIS H. BROWNELL AND CHARLES EARL, EXECUTORS, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110150. Promulgated March 30, 1943.

*A. C. Newlin, Esq.*, for the petitioners.
*P. J. Cavanaugh, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* This case involves gift taxes for the calendar years 1938, 1939, and 1940. Deficiencies were determined as follows: For 1938, $1,650; for 1939, $331.05; and for 1940, $1,388.54. The deficiencies determined were the result of disallowance of a $5,000 exclusion for the year 1938—with effect accordingly in 1939 and 1940. The petitioners claim a refund for each of the years. The claim is based upon a gift to charity included in the gifts involved, which gift to charity was not considered either in the taxpayer's returns or in the Commissioner's determination of deficiency. All of the evidence was adduced by stipulation of facts, except that the gift tax returns of Simon Guggenheim, for the three taxable years, were introduced in evidence. We adopt the stipulation by reference, and find the facts therein recited, as follows:

1. Olga H. Guggenheim, Francis H. Brownell and Charles Earl, the petitioners herein, are the qualified and acting Executors of the Estate of Simon Guggenheim, who died November 2, 1941.

2. Olga H. Guggenheim and Simon Guggenheim were husband and wife. On April 7, 1907, there was born to them a son, who was named George Denver Guggenheim.

3. The John Simon Guggenheim Memorial Foundation is a corporation, created by special act of the Legislature of the State of New York, approved March

846

16, 1925. It is organized and operated exclusively for charitable, scientific, literary and educational purposes. No part of its net earnings inures to the benefit of any private shareholder or individual and no substantial part of its activities is carrying on propaganda, or otherwise attempting, to influence legislation.

4. On March 12, 1938, Simon Guggenheim, deceased, and Olga H. Guggenheim, his wife, jointly created a trust for the benefit of their said son, George Denver Guggenheim, and said The John Simon Guggenheim Memorial Foundation under a trust agreement, copy of which is attached to the Petition herein as Exhibit B thereto. On said date Simon Guggenheim, deceased, and Olga H. Guggenheim, as settlors, each transferred $500,000 in cash to the trustees under said trust.

5. George Denver Guggenheim died on November 8, 1939, leaving him surviving no widow, no child, and no issue of any deceased child. He was never married and never had any children.

6. The value on March 12, 1938 of a life interest in the principal sum of $500,000 measured on the life of an individual thirty-one years of age on that date, did not exceed $337,435.20.

7. The value on March 12, 1938 of an interest in the income of a fund of $500,000 for a term from March 12, 1938 to November 8, 1939, did not exceed $31,301.20.

8. Upon the death of said George Denver Guggenheim the trustees of the trust referred to in paragraph 4 transferred the trust corpus to said The John Simon Guggenheim Memorial Foundation.

9. Simon Guggenheim, deceased, filed a Federal gift tax return for 1938 in which he reported as a taxable gift the sum of $500,000 on account of his contribution to said trust. He also deducted an exclusion of $5,000 with respect to said transfer in calculating included amount of gifts other than charitable, etc., gifts. The return showed gift tax due for the calendar year 1938 of $189,-652.34. Such tax was paid by Simon Guggenheim, deceased, on March 14, 1939, to the Collector of Internal Revenue for the Second District of New York.

10. Simon Guggenheim, deceased, filed a Federal gift tax return for 1939 in which he reported in total net gifts for preceding years the sum of $495,000 on account of his contribution to said trust. The return showed gift tax due for the calendar year 1939 of $95,735.98. Such tax was paid by Simon Guggenheim, deceased, on March 15, 1940, to the Collector of Internal Revenue for the Second District of New York.

11. Simon Guggenheim, deceased, filed a Federal gift tax return for 1940 in which he reported in total net gifts for preceding years the sum of $495,000 on account of his contribution to said trust. The return showed gift tax due for the calendar year 1940 of $81,151.70. Such tax was paid by Simon Guggenheim, deceased, on March 15, 1941 to the Collector of Internal Revenue for the Second District of New York.

12. In determining the alleged deficiency in gift tax for 1938, Respondent has included in net gifts the sum of $500,000 on account of the contribution of Simon Guggenheim, deceased, to said trust. In determining the alleged deficiencies in gift taxes for 1939 and 1940, Respondent, as to each year, has included in total net gifts for preceding years the sum of $500,000 on account of the contribution of Simon Guggenheim, deceased, to said trust.

The trust agreement referred to in paragraph 4 of the above quoted stipulation of facts, so far as material to the issues here, provides as follows:

4. The Trustees shall hold the said sums and shall invest and reinvest the same and collect the income therefrom, and after paying all expenses and proper charges, shall apply so much of the remaining income and at such times and in such amounts and in such manner as the Trustees, in their sole discretion, may determine, to the support, maintenance, use and benefit of GEORGE DENVER GUG-GENHEIM, the son of the Settlors, hereinafter referred to as the "Beneficiary"; and said Trustees shall retain and accumulate so much of said income as may not be applied in the discretion of said Trustees, as aforesaid, and shall add the same to the corpus of the trust. Upon the death of said Beneficiary, said Trustees shall dispose of said corpus as follows:

(a) If said Beneficiary shall die leaving him surviving a widow (to whom he shall be married at the time of his death), the Trustees may set over, transfer and convey so much of the corpus of the trust hereby established, but not exceeding twenty percent (20%) thereof, as they in their sole and absolute discretion may determine, to such widow absolutely and forever.

(b) If said Beneficiary shall die leaving him surviving a child or children or issue of any deceased child or children, the Trustees shall continue to hold said corpus, or if said Beneficiary shall also leave a widow him surviving, so much thereof as shall not have been set over, transferred and conveyed to such widow as hereinabove provided, in trust however, to invest and reinvest the same and collect the income therefrom and, after paying all expenses and proper charges, to apply so much thereof and at such times and in such amounts and proportions and in such manner, as they, in their sole discretion may determine, to the education, support and maintenance, of such child or children or issue so surviving of a deceased child or deceased children, during their respective minorities; and to accumulate the balance of such income; and as each such child and each such surviving issue of a deceased child shall attain the age of twenty-one years, said Trustees shall set over, transfer and convey absolutely to him an equal share, *per stirpes*, in the corpus of said trust and any accumulated income, such surviving issue, who shall attain the age of twenty-one years, of any such deceased child to take collectively the proportionate share of said corpus which their parent would have taken, if such parent had survived such Beneficiary and attained the age of twenty-one years, plus any income accumulated in respect of such share in the hands of the Trustees at the date of such distribution; and if any such child or issue, surviving said Beneficiary, of any deceased child shall die before attaining the age of twenty-one years leaving issue him surviving, then, upon his death, said Trustees shall set over, transfer and convey to such issue, *per stirpes* and not *per capita*, the share of said corpus which their parent would have taken, if such parent had attained the age of twenty-one years, plus any income accumulated in respect of such share in the hands of the Trustees at the date of such distribution; but if any such child or issue, surviving said Beneficiary of any such deceased child shall die without issue before attaining the age of twenty-one years, then the share which such child or such issue would have taken upon attaining the age of twenty-one years shall continue to form a part of the corpus of the trust hereby established.

(c) If said Beneficiary shall die without issue, the Trustees shall set over, transfer and convey the corpus of said trust, or, if said Beneficiary shall leave a widow him surviving, so much thereof as shall not have been set over, transferred and conveyed to said widow as hereinabove provided, to The JOHN SIMON GUGGENHEIM MEMORIAL FOUNDATION, for its corporate purposes absolutely and forever.

  *    *    *    *    *    *    *

7. Every election, determination or other exercise by said Trustees of any power, authority, discretion or right of decision, expressly or by implication herein granted, whether made upon questions actually raised or implied, shall be conclusive and binding upon all persons.

The gift tax returns of Simon Guggenheim, in, material part, in addition to the facts stipulated, recite as follows:

| | 1938 | 1939 | 1940 |
|---|---|---|---|
| Amount of net gifts for year | $590,818.10 | $280,880.00 | $220,540.88 |
| Total amount of net gifts for preceding years | 2,763,666.84 | 3,354,478.94 | 3,635,358.94 |

The first question propounded to us here is whether the Commissioner erred in denying exclusion of $5,000 from the amount of gifts made in 1938, on the theory, as recited in the notice of deficiency, that under section 504 (b), Revenue Act of 1932,[1] the gift was of future interest. The respondent's view is based upon the "sole discretion" vested in the trustees as to distribution of income to the beneficiary, George Denver Guggenheim; and he relies upon the various cases from divers courts, which deny the exclusion because of holding that there is gift of future interest where such discretion appears. *Welch* v. *Paine*, 130 Fed. (2d) 990, is cited as one of such cases. The petitioners, in addition to cases involving interference with discretion vested in trustees, rely upon *Smith* v. *Commissioner*, 131 Fed. (2d) 254. This question has been thoroughly examined by several Circuit Courts of Appeal and by this Court. As pointed out in the recent decision of the Circuit Court of Appeals for the Ninth Circuit in *Fisher* v. *Commissioner*, 132 Fed. (2d) 383, the conclusion in the *Smith* v. *Commissioner* case is based on the court's view of the purpose of the settlor, and the *Fisher* case follows *Commissioner* v. *Brandegee*, 123 Fed. (2d) 58; *Helvering* v. *Blair*, 121 Fed. (2d) 945; *Commissioner* v. *Boeing*, 123 Fed. (2d) 86. With all respect for the opinion in *Smith* v. *Commissioner*, *supra*, we hold that there was a gift of a future interest, and that the Commissioner did not err in denying the $5,000 exclusion.

Next the petitioners present, and we consider, what they designate as a proposition of first impression, as follows: They argue that such amount of the $500,000 gift made, as exceeds the value of the life estate given to the settlor's son, was a gift to a charitable foundation and excluded from tax under section 505 (a) (2) (B), Revenue Act of

---

[1] SEC. 504. NET GIFTS.

\* \* \* \* \* \* \*

(b) GIFTS LESS THAN $5,000.—In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

1932,[2] so that the gift tax should be laid upon only the value of the life estate granted to the son. The argument is, first, that there is here a mere life estate followed by a remainder to charity, since when the gift was made the son was the only life tenant in existence, and the charitable foundation the only remainderman, so that there was no contingency involved, the gift to charity is definite, and, therefore, by use of mortality tables based on the son's age, $337,435.20, the value of the only taxable gift, the life estate, can be ascertained, and the remainder, given to charity, should be left untaxed. Secondly, the petitioners argue, in the alternative, that the facts, now ascertained, are that the son has already died, on November 8, 1939, about twenty months after the date of the gift on March 12, 1938, that the value of the income on $500,000 from March 12, 1938, to November 8, 1939, is $31,301.20, that he died without wife or children, having never been married, that the corpus then in fact passed and was conveyed to the charitable foundation, that we should consider such facts arising after the gift, and therefore approve gift tax only on the $31,301.20, leaving the balance which went to charity free from tax. The parties agree upon the value of a life estate held by a person of the age of George Denver Guggenheim at the date of the gift, and that the foundation which after his death received the trust corpus was one described by section 505 (a) (2) (B), Revenue Act of 1932.

Considering the first proposition, we cannot agree that at the date of the gift there was a simple situation of life estate followed by remainder to a charity, requiring taxation of the life estate only. In our opinion it is obviously logically impossible to so hold, for, considering the matter in the light of the then known facts (as under this heading we understand petitioners' view), in other words, in the light of the trust provisions and the fact that the beneficiary was thirty-two years of age and unmarried, the trust provisions alone make it impossible merely to subtract from the total gift the value of the beneficiary's life estate—for the gift to charity, under the trust instrument, did not, without further contingency, follow the life estate. It was contingent, not only upon the termination of the life estate, but contingent as well upon the death of the beneficiary without wife

---

[2] SEC. 505. DEDUCTIONS.

In computing net gifts for any calendar year there shall be allowed as deductions:

(a) RESIDENTS.—In the case of a citizen or resident—

\* \* \* \* \* \* \*

(2) CHARITABLE, ETC., GIFTS.—The amount of all gifts made during such year to or for the use of—

\* \* \* \* \* \* \*

(B) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals; no part of the net earnings of which inures to the benefit of any private shareholder or individual.

or children. Had he died leaving a wife, the trustees might, in their sole discretion, have set over to her 20 percent of the trust corpus; had the beneficiary died leaving a child or children such child or children would, upon each attaining the age of twenty-one years, have taken the corpus pro rata. Only in the event of death of the principal beneficiary without wife or issue surviving could the charitable foundation succeed to the trust corpus. Patently then, the calculation of the value of the life estate of the principal beneficiary could not reflect a remainder going to charity, and equally plainly, considering the above contingencies provided for by the trust instrument, it was so wholly uncertain whether anything would go to charity that the gift to charity is impossible of consideration (in the light of the facts known at the time of the gift). In *George W. Davison, Executor*, 31 B. T. A. 101, we considered a gift to charity subject to contingencies, and held that, because of the uncertainty as to whether the charity would take at all, that gift could not be upheld. That case involved estate tax; but the gift tax and estate tax are in *pari materia*, and we discern no distinction on this point. Very recently, in *Robinette* v. *Helvering*, 318 U. S. 184, the Supreme Court considered a problem parallel to that before us: That is, as to whether a contingent reversionary interest was capable of such evaluation as to be possible of subtraction from a remainder interest. In holding that the interest was too contingent for evaluation, the Court used language almost describing the present situation:

* * * Factors to be considered in fixing the value of this contingent reservation as of the date of the gift would have included consideration of whether or not the daughter would marry ; whether she would have children ; whether they would reach the age of 21; etc. Actuarial science may have made great strides in appraising the value of that which seems to be unappraisable, but we have no reason to believe from this record that even the actuarial art could do more than guess at the value here in question. *Humes* v. *United States*, 276 U. S. 487, 494.

We conclude that, so far as viewing the matter from the date of gift, the gift to charity may not be excluded from the gift tax.

May we then with good logic take into consideration those facts supervening after gift and before the filing of this case, to wit, that George Denver Guggenheim died after about twenty months, unmarried and without issue, and that then the corpus was in fact conveyed to the foundation? In our opinion we can not. Though such reaction to the question appears at first to be opposed to the realities, high authority is to the contrary. In *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, Mr. Justice Holmes, asked to take into consideration the fact that a widow died within six months after her husband, instead of living out her expectancy according to mortality tables, and upon the very question here at hand, that is, of valuation of a gift to charity after a life estate, said:

\* \* \* By section 403 (a) (3) the net estate taxed is ascertained by deducting among other things gifts to charity such as were made in this case. But as those gifts were subject to the life estate of the widow of course their value was diminished by the postponement that would last while the widow lived. The question is whether the amount of the diminution, that is, the length of the postponement, is to be determined by the event as it turned out, of the widow's death within six months, or by mortality tables showing the probabilities as they stood on the day when the testator died. The first impression is that it is absurd to resort to statistical probabilities when you know the fact. But this is due to inaccurate thinking. The estate so far as may be is settled as of the date of the testator's death. See *Hooper* v. *Bradford*, 178 Mass. 95, 97, 59 N. E. 678. The tax is on the act of the testator, not on the receipt of property by the legatees. *Young Men's Christian Association* v. *Davis*, 264 U. S. 47, 50, 44 S. Ct. 291, 68 L. Ed. 558; *Knowlton* v. *Moore*, 178 U. S. 41, 49, 20 S. Ct. 747, 44 L. Ed. 969; and passim; *New York Trust Co.* v. *Eisner*, 256 U. S. 345, 348, 349, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660; *Edwards* v. *Slocum*, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564. Therefore the value of the thing to be taxed must be estimated as of the time when the act is done. But the value of property at a given time depends upon the relative intensity of the social desire for it at that time, expressed in the money that it would bring in the market. See *International Harvester Co.* v. *Kentucky*, 234 U. S. 216, 222, 34 S. Ct. 853, 58 L. Ed. 1284. Like all values, as the word is used by the law, it depends largely on more or less certain prophecies of the future, and the value is no less real at that time if later the prophecy turns out false than when it comes out true. See *Lewellyn* v. *Electric Reduction Co.*, 275 U. S. 243, 247, 48 S. Ct. 63, 72 L. Ed. 262; *City of New York* v. *Sage*, 239 U. S. 57, 61, 36 S. Ct. 25, 60 L. Ed. 143. Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done, but that the value of the wife's life interest must be estimated by the mortality tables. Our opinion is not changed by the necessary exceptions to the general rule specifically made by the act.

There of course estate tax was being considered, but, as above stated, we are unable to make a distinction in a gift tax case. In each instance a value is being considered, and taxed, and the date for the valuation is necessarily, we think, the date of the gift, just as in estate matters it is (in the absence of special statute) the date of death. We note that in *Robinette* v. *Helvering, supra*, the Supreme Court, considering gift tax, though not on the precise point here at hand, in the language above quoted, spoke of the factors to be considered in fixing the value of the contingent reservation "as of the date of the gift." In *Goodwin* v. *McGowan*, 47 Fed. Supp. 798, it was recently held that a gift tax covered and attached to a gift defeasible at the date of the gift, in spite of the fact that the interest conveyed was subsequently defeated. Gift was made of a remainder subject to a life tenancy. The life tenant survived the donor. Yet gift tax upon the gift was upheld.

The petitioners argue, however, that the *Ithaca Trust* case has been limited, particularly by *Helvering* v. *Safe Deposit & Trust Co.*, 316 U. S. 56, citing and relying upon *Helvering* v. *Grinnell*, 294 U. S. 153, and that thereunder events following the date of the gift should

be considered. In both cases, however, the after-events were events controlled by the beneficiaries, and not as here, the event of death of the beneficiary, subject to no human control. We discern a distinction between such fact and those of renouncement of an appointment, or a compromise, as in the cited cases. The *Grinnell* case is based upon the language of section 302 (f), Revenue Act of 1926, referring to "property passing under a general power of appointment exercised by the decedent by will" and the Court merely held that there was no "passing" because the appointees did not accept. In *Commissioner* v. *Marshall*, 125 Fed. (2d) 943, the court, passing upon a gift tax matter and the taxable value of a gift, cites the *Ithaca Trust* case and says: "The rationale of that case is controlling here." We so consider in this case, and conclude that the fact that the principal beneficiary died prior to the filing of this case and the foundation received the trust corpus, is not ground for regarding the gift to charity, otherwise contingent and of unascertainable value, as having been made definite, certain, and deductible from the gift for tax purposes.

*Decision will be entered for the respondent.*