**Maarten HENKES et al., Plaintiffs,**

**v.**

**John H. FISHER et al., Defendants.**

**Civ. A. No. 70–286–G.**

United States District Court,
D. Massachusetts.

June 15, 1970.

George Waldstein, Sherin & Lodgen, Boston, Mass., for the plaintiffs.

Lawrence H. Norris Asst. Atty. Gen., Boston, Mass., for the defendants.

Before McENTEE, Circuit Judge, and FORD and GARRITY, District Judges.

## OPINION

GARRITY, District Judge.

This action is a due process challenge to the examination scheme authorized and regulated under Massachusetts law for the licensing of architects. Plaintiffs are candidates for registration as architects in Massachusetts, and defendants are the members of the Massachusetts Board of Registration for Architects. Plaintiffs seek injunctive and declaratory relief and a three-judge

court was convened pursuant to 28 U.S.C. § 2281.[1]

Before one may hold himself forth as professionally competent in the practice of architecture within the Commonwealth of Massachusetts, he must be certified and registered under the provisions of Mass.G.L. c. 112, §§ 60a et seq. A Board of Registration of Architects, established under Mass.G.L. c. 13, § 44A is charged with the enforcement of these provisions[2] and is given the power to "make such rules or by-laws, not inconsistent with law, as it may deem necessary in the performance of its duties." Mass. G.L. c. 13, § 44C.

As part of the requirements of registration candidates, with exceptions not relevant here, must pass a written examination on such technical and professional subjects as are prescribed by the Board of Registration of Architects.[3] The examinations that are given annually by the Massachusetts board have been developed by the National Council of Architectural Registration Boards with the professional assistance of the Educational Testing Service of Princeton. The Registration Boards of the 50 states and the 5 territories make up the membership of the National Council, and in the interests of uniformity in the standards of qualification for architectural registration and the coincident ease of reciprocal licensing among the jurisdictions, the test administered by most of the boards throughout the country is that developed by the National Council.

The examination as currently given includes seven individual sections, each of which is graded separately. In order to be registered a candidate must pass all seven parts of the examination.[4] In five of the sections the candidate's competence in architecture is tested through questions requiring objective responses. Since in these sections there is only one best answer to each question, a computer may do the grading. The remaining two sections, site planning and architectural design, require graphic expression of the solutions to specific design problems. There are as many answers to these problems as there are candidates taking the test. Computers cannot grade these sections. They can only be graded by examiners capable of exercising discretion and a degree of subjective judgment.

The Massachusetts board has issued rules and regulations on the subject of these examinations. Section 5.2 (adopted January 22, 1965, amended January 8, 1970) outlines the scope of the testing and gives a general description of each of the sections.[5] The regulation as it was in effect at the time of the 1969 examination described the site planning section as "A short design problem involving a group of public or private buildings of any type, intended to demonstrate the candidate's ability to safeguard the interest of both client and public with respect to land value, obsolescence, traffic; to develop a functional arrangement of buildings and site which will also result *in a visually satisfying*

1. The court has had considerable doubt about its jurisdiction under 28 U.S.C. § 2281. Although, as will be seen, plaintiffs' specific attack is ultimately on language in evaluation criteria on examination sheets, the effect of the relief plaintiffs seek—restraining the board from requiring passing grades in parts of the examinations in architecture before issuing licenses—will upset the entire regulatory process of registering architects in Massachusetts. Viewed in this manner, the issues may be decided by a three-judge court.

2. Mass.G.L. c. 112, § 60N, charges the board with enforcement of §§ 60A through 60M. § 60–O imposes criminal sanctions

for violations and that section is, of course, not enforced by the board.

3. Mass.G.L. c. 112, § 60C.

4. According to the rules and regulations of the Massachusetts Board of Registration of Architects § 5.3(e) (as amended): If a candidate fails any of the seven parts of the examination he may retake such parts provided that he retakes all failed subjects at each retake.

5. § 5.2 as recently amended is simply an incorporation of the description of the written examinations as outlined in a syllabus of examinations issued by The National Council of Architectural Registration Boards.

*composition of forms in space."* [6] (Emphasis added.) The architectural design section was described as: "A specific practical problem involving application of the principles of space design to solution of the program for a building such as might be found in architectural practice. The solution shall be submitted in drawings of specified number, kind, and scale to present an efficient arrangement, logical structural organization, compliance with basic codes for health and safety; also appropriate economy and *satisfying aesthetic quality*.[7] (Emphasis added.)

Each of the plaintiffs has failed either site planning or architectural design or both. With one exception,[8] each is now otherwise qualified for registration. They collectively claim that these sections of the examination and the regulations under which they are given are unconstitutional exercises of state power because they create a capricious, erratic and unreasonable method for determining who are and who are not qualified to be licensed as architects and that they therefore confer an arbitrary discretion to withhold a license from an applicant in violation of the due process clause of the Fourteenth Amendment. This arbitrariness allegedly springs from testing and grading in areas where there are no rational or definable standards that can be applied to judge performance. Thus plaintiffs object to the site planning examination because according to the regulations it asks for solutions that result in "a visually satisfying composition of forms in space";[9] and to the architectural design section because it asks for solutions of "satisfying aesthetic quality."

Plaintiffs do not so much claim that questions of aesthetics or the visual attractiveness of buildings or sites are not within the professional concern of an architect and therefore unrelated to his competence in that field, but rather that these professional concerns are inevitably matters incapable of reduction to standards that will permit a judgment of performance that reaches beyond the arbitrary and capricious. They are basically questions of personal taste, abtractions of a very high order with little or no uniform content of meaning. Plaintiffs' main concern then is with the criteria used to judge performance.[10] Are they so vague and indefinite that they inject into the system of selecting those qualified to be architects in Massachusetts so much free play that candidates *may be* arbitrarily excluded from the practice of their profession; and if so, does this amount to a denial of the due process of the law in violation of the Fourteenth Amendment?

6. § 5.2 as amended and presently in effect describes the site planning problem as follows: "A problem of site development. The solution must comply with the requirements of the program, be clearly presented and demonstrate a knowledge of land use, orientation, terrain, pedestrian and vehicular traffic control and *suitable relationship of the elements to the site and to each other.*" (Emphasis added.)

7. The amended version, effective for the 1970 exam, is as follows: "Design of a building such as might be encountered in architectural practice. The solution must comply with the requirements of the program, demonstrate efficient arrangement, logical structural system, compliance with health and safety codes, appropriate economy, *satisfying aesthetic qualities*, and be clearly presented." (Emphasis added.)

8. Plaintiff William J. Smith failed an additional section—the validity of which is not being questioned. He asks simply to be relieved of retaking the site planning and architectural design sections.

9. The quoted phrase is from § 5.2 of the regulations as they were in effect at the time of the 1969 exam. Plaintiffs also feel that the amended form of the description of the site planning examination (see n. 4) has similarly meaningless language, viz., "suitable relationship of the elements to the site and to each other."

10. The court does not consider of constitutional dimension or deserving of further comment plaintiffs' claim that candidates should have notice of what to study in preparation for the exams and that the regulations do not give adequate notice. The likelihood of any real infringement of rights deserving constitutional protection is so remote that the claim is wholly insubstantial. Plaintiffs' counsel has not stressed the point.

As already mentioned, the regulations issued by the Massachusetts board simply describe the type of examination that will be given in each of the seven sections. Although they presumably set the tone, they are not the final word on the criteria actually used to judge a candidate's performance on the test. Defendants filed with the court copies of the site planning and architectural design examinations that were given in 1969. On the body of each examination sheet was a list of items indicating the features the examiners would consider in grading the graphic solution to the problem presented. These items were labeled "Evaluation Criteria" and each was accorded a specific point value to indicate its relative importance. Plaintiffs' claims, of course, cannot be entertained without consideration of these evaluation criteria.

The purpose of the site planning examination, as stated on the examination sheet itself, was to test a candidate's ability and judgment in site plannings, site design and organization. The candidate was to picture himself as retained by a newly formed small-boat yacht club that had leased lakeside land which was to be developed for recreational purposes. He was to present graphically a site plan that would include the elements indicated in a program describing the broad concerns of the problem in terms of land use and the intended purposes and functions of the club to be built. In addition there were eleven specific facilities that had to be accounted for in the drawing, e. g., picnic grounds, sailboat docks and parking facilities. Each of the facilities required was described in a manner specifically indicating the needs that must be met by the architect.[11] All the relevant measurements and land descriptions were provided and a preprinted sheet with the site area drawn to scale was furnished. It was on this sheet that the candidate was to draw his development plan to meet the requirements of the problem.

On the same sheet were printed the evaluation criteria to be graded on a total of 95 points. They appeared as follows:

Logic of Plan

*Relationship of Spaces*
*Grouping of related functions*—relationship to parking
Circulation Patterns, Vehicular and Pedestrian
Adequate entrance and traffic ways, vehicular and pedestrian separation, cross traffic, service traffic
Functional Use of Site
*Adequate, logical utilization*

Force of Environment

Consideration of Site Conditions
Views, topography, preservation and utilization of natural elements

Human Values in the Solution

Convenience, protection from elements, privacy

*Quality of Design*

*Design Form*
*Apparent, pleasing, oppressive, lacking Rhythm*
*Obvious, flowing, unapparent, lacking Order*
*Structure of design, strong, weak*

Clarity of Presentation

Readability, draftsmanship, completeness

Narrative Comments

Supports solution, indicates concept, shows order of design development
May contribute bonus points

Program Compliance

Minor omissions may cause negative points; major omissions affecting

---

11. For example, the required clubhouse facilities were described as follows: "10,000 sq. ft. This facility should contain a large dining room, kitchen for members, lounge facility with fireplace, and toilet rooms that are accessible from both interior and exterior. In addition, it should have a commanding view of the lake yachting facilities and family activity areas."

organization of solution may cause rejection of paper without grading

The phrases italicized are those the plaintiffs claim are unconstitutionally vague and indefinite in the same manner as the site planning regulation referred to above.[12]

The situation is similar with respect to the examination in architectural design. The stated purpose of that examination is to determine the candidate's knowledge of the practical application of principles of design to solve a particular building program. In the 1969 examination the applicant was asked to provide certain drawings of a headquarter's building for the National Chamber of Commerce. Specific space requirements of the necessary rooms and facilities are listed. As with the site planning examination, judgment of performance is based on a tabulated criteria chart imprinted on the main sheet. It appears as follows—again with the phrases objected to by the plaintiffs italicized:

Circulation pattern and relationship of spaces; *functional arrangement for specific purpose of project*

Consideration of site conditions, topography and adjacent influences

*Consideration of factors affecting human values* in the solution: comfort, convenience, *general welfare*

*Quality of design, mass, form, order,* and consideration of appropriate use of materials

*Logical structural organization of the solution*

Clarity of presentation

Compliance with program requirements and basic codes for health and safety

Given this background the court concludes that the plaintiffs' constitutional claims are plainly insubstantial. There can be no doubt that one has the right to practice his profession free from arbitrary governmental interference. See, e. g., Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). However, it has long been settled that consistently with the Fourteenth Amendment a state may prescribe that only persons possessing reasonably necessary qualifications may practice a profession embracing areas of legitimate state concern, e. g., Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889). Likewise it has long been settled that a legislature may confer a power and delegate considerable discretion in its exercise to an administrative board to make determinations both as to the knowledge and skill which fit one to practice a particular profession and as to the presence or absence of those qualities in a particular candidate. Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923).[13]

Plaintiffs claim, however, that the alleged vagueness of the grading standards render the site planning and architectural design examination schemes totally incapable of functioning in a nonarbitrary manner. For that reason they contend that they should not be required to take these examinations in order to be registered as architects. This is in spite of the fact that the ability to express graphically solutions to specific design or site planning problems, as is required in both challenged examinations, is unquestionably a skill to be expected of professional architects and in spite of the fact that none of the plaintiffs have

12. It should be noted that the language and standards to be used in the evaluation criteria for the 1970 exam are not presently known to the Massachusetts board and are subject to change from year to year.

13. "To determine the subjects of which one must have knowledge in order to be fit to practice dentistry; the extent of knowledge in each subject; the degree of skill requisite; and the procedure to be followed in conducting the examination—these are matters appropriately committed to an administrative board." Douglas v. Noble, *supra*, at 169–170, 43 S.Ct. at 305.

come to court having demonstrated competence in that area.[14]

Lack of clarity in legislation is, of course, a deficiency to be avoided and statutes have been declared invalid because the degree of imprecision in the language reached constitutional proportions. Indeed this has been done, as plaintiffs would have us do here, without focusing on the particular facts of the individual litigant's situation but rather on the potential application of the indefinite statute itself. See, e. g., Winters v. New York, 1948, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840, dealing with a penal statute prohibiting the distribution of magazines principally made up of stories of criminal deeds of bloodshed or lust so massed as to become vehicles for inciting violent crimes against the person. Focusing simply on the statute as construed by the highest state court, and without considering the specific activities of the defendant, the Supreme Court concluded that the statute was void for vagueness because it prohibited acts within the protection of the First Amendment.

Vagueness analysis, however, has generally been limited to attacks either on state criminal statutes where the vice of imprecision is the failure to give notice of the conduct to be avoided, e. g., International Harvester Co. v. Kentucky, 1914, 234 U.S. 216, 34 S.Ct. 853, 58 L.Ed. 1284; or on regulatory statutes whose vague and indefinite language permit an unconstitutional state intrusion into areas of private liberties specifically protected by the Bill of Rights, e. g., Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098. See generally, Note: The Void for Vagueness Doctrine in the Supreme Court, 109 U. of Pa.L.Rev. 67, 1960.

Although the present case falls into neither of these categories, we do not conclude that vagueness analysis is wholly inappropriate. Rights protected by the "liberty" assurance of the due process clause are not limited to those expressly guaranteed by one or more of the first eight amendments. Richards v. Thurston, 1 Cir., 424 F.2d 1281, Apr. 28, 1970. Vagueness analysis has some relevance wherever due process is demanded. But cf. Dandridge v. Williams, April 6, 1970, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491.[15]

It by no means follows, however that the same precision of language is necessary in evaluation criteria on state licensing examinations as is necessary on statutes defining criminal conduct or regulating areas falling within specific guarantees of the Constitution. Vagueness is a question of degree. As has been noted in the Supreme Court, "almost any word or phrase may be rendered vague and ambiguous by dissection with a semantic scalpel." Cole v. Richardson, 1970, 397 U.S. 238, 240, 90 S.Ct. 1099, 1101, 25 L.Ed.2d 275 (Harlan, J. concurring). The degree to which the court should engage in verbal calisthenics in determining the permissible flexibility of statutory language will depend upon such considerations as the nature of the rights involved, the danger to those rights of imprecision in the language of statutes affecting them, the amenability of the subject matter to more specific articulation, the persons by whom, and the sense of responsibility with which, the questionable legislation will be applied, and the ability of the court meaningfully to relate the permissible breadth of the language to the ultimate substantive rights involved. See, Note: The Void for Vagueness Doctrine

14. Plaintiffs have not suggested that the grading criteria on the exams testing these skills could be articulated with any more precision than is presently the case. Their attack is directly upon the words used without any comparison with words which might have been used.

15. This case involved an equal protection challenge to regulations of the State of Maryland adopting a maximum grant system of allocating its funds available for AFDC payments. The Supreme Court rejected a contention that the regulation was invalid on its face for "overreaching" —a concept not unlike "void for vagueness" analysis.

in the Supreme Court, *supra,* at 94, and E. Freund, The Use of Indefinite Terms in Statutes, 1921, 30 Yale L.Rev. 437, 438–439.

When considered in this light, plaintiffs' vagueness contentions warrant only cursory judicial scrutiny. They cerainly do not warrant a word by word analysis of the questioned evaluation criteria. The language challenged concerns only a small section in an otherwise perfectly valid and fairly administered scheme for determining who are qualified architects. Whatever indefiniteness exists is confined to the context of specific test problems and directed toward individuals far more capable than this court (that is, the graders—experienced practicing architects) in making the overall judgments of what is required for, and what amounts to, competence in architecture. Although there is no question that the evaluation criteria permit elements of subjectivity to enter into the grading system, this is inevitable wherever judgment and discretion are involved. Plaintiffs' own affidavits recognize that architecture inevitably involves value judgments of a maze of conflicting requirements. The site planning and the architectural design examinations ask a candidate to balance the conflicting requirements of a specific problem; the grading criteria permit satisfactory answers of an infinite variety. The language that plaintiffs contend is indefinite is simply the means provided to produce the flexibility necessary when such value judgments must be made. In effect plaintiffs ask for total objectivity in grading licensing examinations. Whether this is a possible goal, or even a desirable goal, it certainly is not demanded by the due process clause. The law is filled with instances where one's rights depend on the fallible exercise of judgment by men. See generally Winters v. New York, *supra,* dissenting opinion by Mr. Justice Frankfurter.

Plaintiffs' specific vagueness contentions warrant no further detailed consideration. The complaint is dismissed on the merits.