Rodolfo F. Aponte, Administrador de Inquilinato de Puerto Rico, peticionario, *v.* Tribunal del Distrito Judicial de San Juan, P. R., Hon. R. Cordovés Arana, Juez, demandado; Angel M. Villamil y Francisco A. Crescioni, interventores.

Núm. 1.—*Sometido:* Noviembre 6, 1947. *Resuelto:* Diciembre 4, 1947.

Manuel Ledesma Dávila, abogado del peticionario; Vicente Géigel Polanco, abogado de los interventores Villamil y Crescioni; E. T. Fidler, José G. González, Tomás I. Nido, Jorge M. Morales, Ramón L. Nevares, Mariano Canales y Andrés Guillermard, abogados de la interventora Warner Bros. Inc., y Charles R. Hartzell y Rafael G. Hernández, abogados del interventor Rafael G. Martí.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

La única cuestión envuelta en el presente recurso, incoado de conformidad con las disposiciones del artículo 7 de la "Ley de Alquileres Razonables" (Ley núm. 464 de 25 de abril de 1946, pág. 1327), es la siguiente: ¿Está facultado el Administrador de Inquilinato de Puerto Rico, por las disposiciones de la Ley de Alquileres Razonables, para conceder un aumento del canon de arrendamiento estipulado por las partes en un contrato de arrendamiento por término fijo, estando dicho contrato aún vigente en la fecha en que se solicita por el arrendador el aumento del canon?

He aquí los hechos. Los señores Angel M. Villamil y Francisco A. Crescioni adquirieron, en 29 de septiembre de 1945, por compra a don Manuel Pérez Blanco, una casa de dos plantas y un almacén dedicados a oficinas comerciales exclusivamente. En la fecha de la adquisición, las oficinas estaban arrendadas mediante contratos por escrito, en la forma siguiente:

1. Una mitad de la planta baja a Warner Bros. First National South Films, Inc., por $100 mensuales, por contrato de abril 1, 1936, por término de 10 años, con opción de prórroga por 5 años más, a la cual se acogió la arrendataria.

2. La otra mitad de la planta baja a don Rafael G. Martí, por canon de $85 mensuales, por escritura de 21 de abril de 1936, siendo

el término el de 10 años, con opción a prorrogarlo por cinco años más, a la cual se acogió oportunamente el arrendatario.

3. La planta alta del edificio de dos plantas está arrendada a United States Selective Service, sin término fijo, por canon de $200 mensuales, según contrato de 1 de julio de 1945.

4. El almacén a A. Alvarez Hnos., por un canon mensual de $200, según escritura de 2 de agosto de 1937, por un término de diez años y opción de cinco años más, la que actualmente disfruta.''

En noviembre 22 de 1946, los arrendadores señores Villamil y Crescioni radicaron ante el Administrador, aquí peticionario, una solicitud de aumento del alquiler básico, en la que pedían que se dictase una orden autorizando un aumento de 50 por ciento sobre el alquiler máximo prevaleciente el 1º de octubre de 1942 en el caso de los cuatro locales comerciales, ''de acuerdo con lo dispuesto en la Ley de Alquileres Razonables y en los incisos (4), (5) y (6)a del artículo 5 del Reglamento de Inquilinato para locales comerciales.'' En noviembre 27 de 1946 el Administrador dictó una orden denegando la solicitud y el 9 de diciembre de 1946 declaró no haber lugar a la reconsideración que le fuera solicitada.

No estando conformes con la decisión del Administrador, los arrendadores acudieron ante el Tribunal del Distrito Judicial de San Juan solicitando la revisión y anulación de la orden dictada por el Administrador. En mayo 28 de 1947 el Tribunal de Distrito dictó su resolución anulando la orden dictada por el Administrador en cuanto a los casos de los inquilinos Warner Bros. Inc., Rafael G. Martí y A. Alvarez & Hnos. y resolviendo que el Administrador tiene facultad para decretar el aumento, si las circunstancias así lo ameritan, no obstante existir un contrato por término fijo en el que se ha estipulado un canon uniforme hasta la terminación del arrendamiento. No estando conforme, el Administrador radicó el presente recurso, en el cual han intervenido como partes interesadas los señores Warner Bros. Inc. y Martí.

Pasemos ahora a considerar y resolver la cuestión fundamental sometida a nuestra decisión.

Los arrendadores sostienen (*a*) que el párrafo 2 del artículo 6 de la Ley de Alquileres Razonables(1) faculta al Administrador para fijar alquileres razonables sobre el alquiler básico prevaleciente el primero de octubre de 1942; (*b*) que en el caso de existir un contrato celebrado antes de octubre 1, 1942, fijando el canon que deberá pagarse después de esa fecha, se considerará como *alquiler básico* el fijado en el contrato, y sobre ese alquiler básico el Administrador puede ejercer su facultad de fijar un alquiler razonable por los motivos expresados en el artículo 6 de la Ley; y (*c*) que los motivos alegados por los arrendadores para que se les fije un alquiler razonable—aumento substancial en el número de ocupantes de uno de los locales; aumento extraordinario en la importancia comercial de la zona en donde radican las propiedades; y aumento de las contribuciones territoriales— aparecen expresamente consignados en el artículo 6 de la Ley de Alquileres Razonables y en los incisos (4), (5) y (6) del

(1)*Artículo 6.*—Excepto en la forma que más adelante se provee, a partir de la fecha de vigencia de esta Ley no podrá cobrarse un alquiler mayor del que se pagaba el primero de octubre de 1942.

"Mientras no sea alterado por el Administrador de acuerdo con las facultades que en adelante se le confieren, a los efectos de esta Ley, se entenderá por 'alquiler básico' el alquiler que se pagaba en esa fecha, a menos que se haya concertado antes de ella algún convenio fijando un alquiler mayor o menor por cualquier período posterior a esa fecha. En este caso, el alquiler básico será el alquiler convenido.

"En caso de edificaciones destinadas a negocios, o propósitos comerciales o industriales, el Administrador podrá autorizar aumentos razonables sobre el canon prevaleciente el primero de octubre de 1942, según la importancia comercial de los pueblos y zonas en que estén radicadas tales edificaciones y su coste de construcción; *Disponiéndose, sin embargo,* que tales aumentos no excederán en ningún caso del cincuenta (50) por ciento del canon prevaleciente el primero de octubre de 1942.

"El Administrador tendrá poderes para fijar el alquiler razonable en todos los casos en que, a juicio suyo, el alquiler prevaleciente el primero de octubre de 1942, o el que se hubiera fijado con posterioridad a esta fecha, fuere excesivo, irrazonable u opresivo. Asimismo, tendrá poder para hacer ajustes y otras determinaciones en los casos que envuelvan mejoras de importancia capital, aumento o reducción del mobiliario, equipo o accesorios, aumento o reducción en los servicios y suministros, o deterioro de la vivienda o del edificio arrendado."

apartado "a" del artículo 5 del Reglamento de Inquilinato para Locales Comerciales.(2)

Lo primero que debemos considerar es el propósito fundamental de la Ley de Alquileres Razonables, los antecedentes históricos que motivaron su aprobación por la Legislatura y el mal que se trató de impedir o remediar mediante dicho estatuto.

Al comenzar la lectura de la Ley de Alquileres Razonables encontramos en su artículo 1 una extensa y clara exposición de los motivos que tuvo el legislador para aprobar dicho estatuto y del mal que se trataba de corregir aplicando sus disposiciones. "La especulación en el arrendamiento de viviendas, solares, casas y edificaciones *a base de alquileres injustos, irrazonables y abusivos,* y otros factores económicos y sociales (que) agravan el problema de la vivienda hasta el punto de crear *una situación de emergencia* que afecta el bienestar, la salud, la seguridad y la vida de cientos de miles de mujeres, hombres y niños a través de los campos y pueblos de Puerto Rico"; el hecho de que en la fecha en que se aprobó la Ley, 135,786 familias se albergaban en casas y

---

(2)"a. *Motivos para aumentar el alquiler máximo.*—Cualquier casero puede solicitar del Administrador el aumento del alquiler máximo por uno o más de los siguientes motivos únicamente:

"* * * * * * *

"(4) *Circunstancias peculiares; alquiler irrazonable u opresivo.*—El alquiler máximo, por aumento substancial en el número de subinquilinos u otros ocupantes o por circunstancias peculiares otras que las expresamente reconocidas en este Artículo, resulta irrazonable u opresivo para el casero y no guarda relación con los prevalecientes para locales similares en la fecha que lo determinó.

"(5) *Aumento en contribuciones.*—En la fecha que determinó el alquiler máximo, el local en cuestión gozaba de exención de contribuciones sobre la propiedad y el beneficio de dicha exención pasaba al inquilino, resultando en un alquiler más bajo que el prevaleciente para locales similares en dicha fecha y la exención contributiva ya no existe; o se han impuesto, después de dicha fecha, contribuciones especiales o adicionales que ameritan el aumento del aquiler.

"(6) *Zona Comercial; Coste de Construcción.*—La importancia de la zona comercial en donde está enclavado el local comercial o el coste de construcción del mismo, si se trata de una construcción reciente amerita un aumento al alquiler máximo. Los aumentos que se conceden a base de lo anterior no excederán del 50% del aquiler prevaleciente en octubre 1ro. de 1942, o en su defecto, del que se fije por comparación."

apartamientos arrendados, *"pagando alquileres excesivos* en la generalidad de los casos y siendo víctimas de abusivas prácticas de especulación," prácticas que se habían extendido también a las casas y edificios dedicados a negocios e industrias; y el hecho de que debido a la gran demanda de locales para fines comerciales *"numerosos propietarios han estado y continúan imponiendo a sus arrendatarios* contratos injustos, irrazonables y abusivos; *han aumentado las rentas* hasta sumas que en algunos casos exceden del doscientos (200) por ciento del canon original y están recurriendo a diversas prácticas de especulación y de violento desalojo de negocios e industrias de importancia económica para el país," fueron las causas o motivos que impulsaron al legislador a buscar un remedio para una situación que causaba graves perjuicios al bienestar, a la salud y a la seguridad de un gran número de personas, que por no ser dueños del local donde tenían establecido su hogar o su negocio, eran víctimas de abusivas prácticas de especulación por parte de los arrendadores. La intención legislativa aparece claramente expuesta en el párrafo 4 de la citada exposición de motivos, que dice así:

"Para asegurar adecuada protección al pueblo de Puerto Rico en lo que concierne a este grave problema de la vivienda, falta, sin embargo, legislación apropiada sobre inquilinato, *a fin de evitar la especulación por parte de los arrendadores, de garantizar alquileres razonables y de amparar convenientemente los derechos de los inquilinos."*

No encontramos en la exposición de motivos ni en todo el texto de la Ley de Alquileres Razonables una sola palabra o frase alguna que revele preocupación por parte de la Legislatura en cuanto a los dueños de locales residenciales o comerciales que se habían obligado por contrato a arrendar dichos locales, por un número de años y por un canon inferior al que en la fecha de aprobación de la Ley se pagaba por locales similares. Es evidente que la Legislatura no sintió preocupación alguna por que ciertos alquileres fuesen ba-

jos, y que sí la sintió al darse cuenta de que los arrendatarios que no estaban protegidos por contratos por largos términos estaban siendo víctimas de las prácticas abusivas de sus arrendadores, quienes, aprovechándose de la gran demanda de locales para viviendas y para fines comerciales e industriales, imponían a sus arrendatarios condiciones onerosas y cánones excesivos. La intervención del poder legislativo para proteger a los arrendatarios no protegidos por contratos a largo plazo, era absolutamente necesaria para impedir el alza irrazonable de los precios, pues es sabido que el comerciante o el industrial que se ve obligado a pagar un alquiler excesivo, tiene necesariamente que pasar el exceso al público consumidor, ya sea aumentando el precio o disminuyendo el peso o cantidad del producto. No era, por el contrario, necesario para la defensa del "bienestar, la salud y la seguridad del pueblo" que se facultase al Administrador para intervenir y cambiar las condiciones de un contrato de arrendamiento todavía vigente, con el propósito único de aumentar el canon libremente estipulado por las partes. El pueblo no ha de sufrir perjuicio alguno si no se permite al arrendador de bienes inmuebles cobrar un alquiler mayor que aquél especificado en el contrato. Si el legislador hubiese autorizado expresamente al Administrador para alterar los términos de un contrato por un término fijo, aumentando el canon estipulado entre las partes, sin que esa alteración fuese necesaria para la protección del bienestar, la salud o la seguridad del pueblo, que es lo único que justificaría el ejercicio del poder de policía (*police power*) del Estado, la constitucionalidad de tal autorización sería muy dudosa.

Los casos de *Block* v. *Hirsh,* 256 U.S. 135 y *Marcus Brown Company* v. *Feldman,* 256 U.S. 170, citados por los arrendadores en apoyo de su contención de que la interpretación que ellos dan al estatuto es constitucional, no son aplicables a la situación que nos presenta el caso de autos. En el pri-

mero de dichos casos, Hirsh compró un edificio en el cual Block ocupaba el sótano y el primer piso por virtud de un contrato de arrendamiento celebrado con el anterior dueño y que expiraba el 31 de diciembre de 1919. Requerido por Hirsh para que le entregase el local al terminar el contrato, negóse a ello Block, alegando en oposición a la demanda de desahucio interpuesta en su contra que la sección 109 de la Ley de octubre 22, 1919 (c. 80, Title II—"District of Columbia Rents", 41 Stat. 297, 298, 301) concedía al arrendatario el derecho a continuar, a su opción, en la posesión del local, no obstante haber expirado el término del arrendamiento, mientras pague el alquiler y cumpla con las condiciones fijadas por la comisión creada por dicha Ley. Al sostener la validez del estatuto, la Corte Suprema se expresó así:

"El argumento principal en contra de la ley es que a los arrendatarios se les permite continuar en posesión por la misma renta que habían estado pagando, a menos que ésta sea modificada por la Comisión creada por la ley, y que en esa forma el uso de la propiedad y el derecho del dueño a hacer con lo suyo lo que le plazca y a celebrar los contratos que desee quedan menoscabados. Pero si el interés público queda establecido, la reglamentación de los alquileres es una de las primeras formas en que se manifiesta, y la validez de esa reglamentación ha quedado sentada desde que se decidió el caso de *Munn* v. *Illinois,* 94 U.S. 113 . . . .

"La Ley provee lo necesario para garantizar al arrendador una renta razonable. Sección 106.—Puede asumirse que la interpretación de 'razonable' le privará en parte por lo menos del poder de beneficiarse con el repentino influjo de gente hacia Wáshington causado por las necesidades del Gobierno y por la guerra, y así de un derecho usualmente incidental a una propiedad afortunadamente situada—de una parte del valor de su propiedad según se define en *International Harvester Co.* v. *Kentucky,* 234 U.S. 222, *Southern Ry., Co.* v. *Greene,* 216 U.S. 400, 414. Pero aun cuando sea injusto denunciar esos beneficios derivados de una crisis nacional, la política de limitarlos ha sido incluída en las leyes contributivas y está aceptada. Va, si acaso, un poco más allá de la restricción que se impone al dueño de dinero por las más debatibles leyes contra la usura. La

preferencia que se da al arrendatario en posesión es un casi necesario incidente de dicha política y es tradicional en el derecho inglés. Si el arrendatario quedase sujeto al poder del arrendador para desahuciarlo, el esfuerzo para limitar las exigencias del arrendador fracasaría.''

En el caso de autos no se trata de un inquilino que se encuentra·en posesión después de haber expirado su contrato de arrendamiento y que estaría expuesto a ser lanzado del local si no aceptase las condiciones onerosas e injustas que el arrendador tuviera a bien imponerle. Los inquilinos en este caso están protegidos por contratos cuyo término no expirará hasta el año 1951. Ellos tienen derecho a permanecer en la posesión de sus respectivos locales mientras paguen el alquiler estipulado y cumplan con las demás condiciones del arrendamiento. Repetimos, no encontramos en la Ley precepto alguno que directa o indirectamente autorice al Administrador para intervenir, a instancia del arrendador, con el propósito de aumentar los cánones convenidos por las partes. Los hechos en *Marcus Brown Co.* v. *Feldman,* supra, son casi idénticos a los de *Block* v. *Hirsh,* tratándose también de inquilinos que reclamaban su derecho bajo las leyes del estado de New York a continuar en posesión después de la expiración del contrato de arrendamiento. Véase *Leavy Leasing Co.* v. *Siegel,* 258 U.S. 242.

*Opinamos que la corte inferior erró al dictar la resolución recurrida y que la misma debe ser anulada y el caso devuelto a la corte de su procedencia con instrucciones de dictar una resolución desestimando la petición.*