ANDREW GELLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11369. Promulgated September 29, 1947.

*Arthur Richenthal, Esq.*, for the petitioner.
*Fred R. Tansill, Esq.*, for the respondent.

## OPINION.

DISNEY, *Judge*: The deficiencies constituting the subject of this case result from the Commissioner's action, in the computation of gift taxes for 1943 and 1944, in increasing net gifts for preceding years by denying six $5,000 exclusions from gifts made and reported in 1938. The petitioner contends, in substance, that, pursuant to section 1000 (e) of the Internal Revenue Code, he executed a relinquishment of the power reserved in him to modify, alter, or terminate the trust by directing the trustees to pay trust principal to others, that the Commissioner filed his consent that the trust be considered a completed gift when made, that the Commissioner by letter held that the transfer in trust "constituted a completed gift as of the date of creation of the trust," and that, therefore, the Commissioner was inconsistent and erroneous when by determination of deficiency he held that the gifts in trust were gifts of future interests and not entitled to exclusions of $5,000 each.

The Commissioner, in the deficiency notice explaining the determination, stated only that in view of the trustor's reservation of right to modify, alter, or terminate the trust by directing the trustees to pay the principal to any designated person or persons, it is held that the beneficiaries did not have unrestricted right to immediate use, possession, or enjoyment of income or corpus and, therefore, the gifts were of future interests, "against which no exclusions are allowable, even though said gifts were held to constitute gifts, as of the date the trust was created, within the meaning of the provisions of Section 1000 (e) of the Internal Revenue Code, as added by Section 502 of the Revenue

Act of 1943." He accordingly limited the exclusions claimed to the value of the direct gifts made during the calendar year 1938.

The petitioner argues that the deficiency letter "ignores completely the fact that in a letter to the petitioner accepting his revocation of his powers, the Commissioner had stated that the transfer in trust of November 16, 1938, 'constituted a completed gift as of the date of creation of the trust' "; that the Commissioner's position in the deficiency letter is contradictory and raises the question "whether Congress intended that a gift can be completed for gift tax purposes by the removal of a power and, nevertheless, for the purposes of determining exclusions, the power should be deemed to exist"; and that, if the Commissioner contends generally, aside from the position taken in the deficiency letter as to section 1000 (e), that the trust gifts were of future interests, they are not such.

We note at the outset that the petitioner is, in fact, in error in saying that the Commissioner by his letter of December 27, 1944 (after petitioner's consent of December 8, 1944), "held that the transfer in trust of November 16, 1938, 'constituted a completed gift as of the date of creation of the trust.' " Though it is true that in his written consent of December 8, 1944, the petitioner consented "to treat the original transfer in trust as a completed gift in the calendar year in which effected," the parties stipulate only that the Commissioner "accepted the return for 1938 as filed," and the Commissioner's letter of December 27, 1944, bears this out, stating that the return for 1938 "is accepted as filed." This is followed immediately by: "and the transfer in trust under the trust agreement created April 25, 1932 is held to constitute completed gifts as of the date of the creation of the trust," so that it is plain that reference is to another trust—not before us here. The Commissioner's letter makes clear distinction, in this respect, between the trust of November 16, 1938, and that of April 25, 1932, both of which are covered by the letter. We can not therefore find inconsistency in the Commissioner's position, so far as based upon the language in his letter of December 27, 1944, for therein he does not agree that there was completed gift on November 16, 1938, but merely accepts the 1938 return as filed. This obviously does not preclude the present contention that the gifts then made were gifts of future interests.

However, even had the Commissioner stated by letter that the transfer in trust of November 16, 1938, constituted a completed gift as of date of creation of the trust, we would still have the question as to proper construction of sections 1000 (e) and 1003 (b) (1) of the In-

ternal Revenue Code.[1]  No estoppel is pleaded or proved against the respondent, and the fact that he stated in the deficiency notice only one ground for holding that the trust gifts in 1938 were of future interests does not preclude his relying now—as he does—on other grounds. *Edgar M. Carnrick,* 21 B. T. A. 12; *Millar Brainard,* 7 T. C. 1180 (1184); *Dorothy Whitney Elmhirst,* 41 B. T. A. 348. The petitioner does not, in fact, argue otherwise; and no surprise is claimed, the respondent's counsel having upon trial expressly stated that he did not rely entirely upon the retained power in trustor to change beneficiaries in determining whether there were future or present interests, that being one ground, but other elements in the trust instruments also being relied on. We therefore proceed to interpretation of the pertinent statutes to determine whether the gifts were of present or of future interests, first considering the effect of petitioner's relinquishment of power retained to change beneficiaries and his consent under section 1000 (e).

In our view, such relinquishment and "consent to treat the original transfer in trust as a completed gift in the calendar year in which effected and for all periods thereafter," does not determine the question whether the gifts in trust were of future, or of present, interests.

---

[1] SEC. 1000. IMPOSITION OF TAX.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(e) CERTAIN DISCRETIONARY TRUSTS.—In the case of property in a trust created prior to January 1, 1939, if on and after January 1, 1939, no power to revest title to such property in the grantor could be exercised either by the grantor alone, or by the grantor in conjunction with any other person not having a substantial adverse interest in the disposition of such property or the income therefrom, then a relinquishment by the grantor on or after January 1, 1940, and prior to January 1, 1945, of power or control with respect to the distribution of such property or the income therefrom by an exercise or other termination of such power of control shall not be deemed a transfer of property for the purposes of this chapter. If such property was transferred in trust, the grantor not retaining such power to revest title thereto in himself, or if such power to revest title to such property in the grantor was relinquished, while a law was in effect imposing a tax upon the transfer of property by gift, this subsection shall apply only if (1) gift tax was paid with respect to such transfer or relinquishment, and not credited or refunded, or ·a gift tax return was made within the time prescribed on account of such transfer or relinquishment but no gift tax was paid with respect to such transfer or relinquishment because of the deductions and exclusions claimed on such return, and (2) the grantor consents, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, for all purposes of this chapter to treat such transfer or relinquishment in the calendar year in which effected, and for all periods thereafter, as having been a transfer of property subject to tax under this chapter. This subsection shall not apply to any payment or other disposition of income occurring prior to the termination of power or control with respect to the future disposition of income from the trust property.

SEC. 1003. NET GIFTS.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) EXCLUSIONS FROM GIFTS.—

(1) GIFTS PRIOR TO 1939.—In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year 1938 and previous calendar years, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

The gifts could be complete in 1938, and yet convey only future interests. Therefore later consent that the gifts be regarded completed when made does not solve the present problem. A future interest in property, within the meaning of section 1003 (b) (1), is one "limited to commence in possession or enjoyment at a future date." *United States* v. *Pelzer*, 312 U. S. 399, which approves Regulations 79, article XI, defining future interests as including any estate or interest, whether vested or contingent, "limited to commence in use, possession or enjoyment at some future date or time." No reason occurs to us, or is demonstrated, why a completed gift could not be one limited to commence in use, possession, or enjoyment sometime in the future; for the right so given might be irrevocable and vested, to be enjoyed, however, in the future. We conclude that, however complete the gifts here involved were in 1938, we must still inquire whether they were, within the text of section 1003 (b) (1), future, or present, interests. We find nothing to the contrary in the provisions or the history of section 1000 (e) militating against this view. The purpose of section 502 of the Revenue Act of 1943, enacting section 1000 (e) is plain. *Sanford* v. *Commissioner*, 308 U. S. 39, had held that there was no completed gift made by a trust reserving to the trustor the right to redistribute the principal (even though not to himself), but that gift tax was payable upon relinquishment of the power. Congress, believing that such decision might entail injustice upon those who had created such trusts prior to the decision, provided in substance, so far as here concerned, that within a limited time the retained power could be relinquished without incidence of gift tax, provided, in a case such as this, in the language of section 1000 (e), that "the grantor consents, in accordance with regulations prescribed * * * for all purposes of this chapter to treat such transfer * * *, as having been a transfer of property subject to tax under this chapter." The regulation prescribed (Regulations 108, sec. 86.3) uses the slightly different language : "the grantor agrees * * * to continue to treat such prior transfer * * * as completing the gift for all purposes of the gift tax statute." The trustor, petitioner here, so consented. Whether the prior transfer is treated "as a transfer * * * subject to tax," as the statute says, or as "completing the gift," in the words of the regulation, we see neither in the statute nor in the consent anything to indicate that the transfer shall not be examined as to whether it involves future gifts. Indeed, immediately after the above quoted language, the regulation (in accordance with which the statute, as above seen, prescribes the consent) continues : "Upon submission of such written agreement, the Commissioner may make any necessary redetermination of the amount of the net gifts for such prior year." This is what the Commissioner did here. We are unable, from statute, regulation, or committee reports (C. B. 1944, pp. 954, 997,

1079–1080), to say that the regulation goes beyond the statute; particularly since we note that the statute is broader than the regulation in treating the effect of consent as treating the prior transfer as subject to tax, rather than as "completing the gift," in the phrase of the regulation. If the only effect of the consent is to regard the transfer as subject to tax, obviously it may be scrutinized as to whether of present or future interests. We are of the opinion that the petitioner's consent does not close the question of present or future interests.

This conclusion calls for determination whether the gifts in trust were in fact gifts of present interests or of future interests. After extensive study of the trust indenture and cases cited by both parties involving this question, we are convinced that future interests were donated by the instrument here involved, so far as trust principal is concerned. Principal was not to be divided until the death of settlor's wife. Then it was to be equally divided into so many equal shares that there should be one for each then living child of the settlor, and one for the descendants then living of each deceased child of the settlor, the income of each share during the life of each child to be paid to such child. Only upon the death of such child was principal to be paid over—and then only to the child's appointees by will; or in case of ineffective appointment, *per stirpes*, equally to the child's descendants then living or, if none, *per stirpes*, equally to settlor's descendants then living, or, if none, to those who would inherit from such child under New York law. Each share so set apart for a child of the settlor, if such child was not in being at the creation of the trust, was to be held in trust, not longer than the life of the settlor's youngest child in being at time of creation of the trust who should survive the settlor's wife, or, if no such child should survive her, then not longer than the life of the survivor of settlor and his wife. In case no descendant of the settlor survived the settlor's wife, upon her death trust principal was to be paid over to the persons who would take upon the settlor's then death, intestate. The trust indenture further provided, *inter alia*, that after the settlor's death the trustees could apply to the use of the settlor's wife, and his descendants, or any of them, such trust principal as in their discretion was deemed advisable for proper education, care, comfort, or support, amounts so expended for any descendant to be deducted from the principal of any share set apart for the descendant, his parents or descendants.

Other provisions (such as those with reference to survivorship among the descendants; *Ryerson* v. *United States*, 312 U. S. 405) are also relied upon by the respondent as demonstrating that the gifts were of future interests, but we think those above enumerated amply so show, so far as trust principal is concerned. The settlor's children never had an absolute right to take principal. They could only ap-

point by will. Their descendants would take only if their parents, settlor's children, did not appoint to others. But, in any case, the principal was for a time held undivided (until death of settlor's wife). Then it was to be divided, but not paid over to anyone. The settlor's children even then did not take. The only one who finally could take the principal was either an appointee of a child of settlor, or, in case of no effective appointment, such child's descendants. Other more remote contingencies followed. Plainly, the use, possession, or enjoyment of the trust corpus did not pass to anyone at the date of the trust indenture, but was limited to commerce "at some future date or time." *United States* v. *Pelzer, supra; Fondren* v. *Commissioner*, 324 U. S. 18, saying in effect that vested rights alone do not comprise present interests, the donee being required to have a right presently to use, possess, or enjoy the property donated; *F. J. Sensenbrenner*, 46 B. T. A. 713; *Lillian Seeligson Winterbotham*, 46 B. T. A. 972; *Alma S. Hay*, 47 B. T. A. 247; *Vivian B. Allen*, 3 T. C. 1224; *Fisher* v. *Commissioner*, 132 Fed. (2d) 383. The provision that after the settlor's death the trustees might, in their discretion, apply principal for use of settlor's wife or descendants, as deemed advisable for their proper education, care, comfort, or support, obviously does not make the gift of corpus a gift of present interest. We hold that no exclusions could properly be based upon gifts of corpus.

The question then remains as to whether there was gift of present interests, as to income. The trust indenture provides that income is payable to minors only within the discretion of the trustees, to be accumulated in their discretion and paid upon the minor reaching 21 years of age. Two of the six donees were minors, under 21 years of age, at the date of the gift in trust. Therefore the gifts of income as to the minors were of future interests. *Fisher* v. *Commissioner, supra; Lillian Seeligson Winterbotham, supra; Fondren* v. *Commissioner, supra; Estate of Simon Guggenheim*, 1 T. C. 845; *Welch* v. *Paine*, 130 Fed. (2d) 990. As to the settlor's wife and three adult children, we hold that the interests in income were present, in so far as each had a right to one-sixth of the income for life. (In addition, the wife had the contingent right, if she survived all of the settlor's descendants, to all of the income for life. That is, in our view, not a present interest, under authorities above cited.) However, the value of none of these present interests is shown by the record before us, nor stipulated. On brief the petitioner says "No one knows in any year what the income on the stock of Andrew Geller Shoe Mfg. Co., Inc. will be, but in any year that there is a dividend, that dividend has to be distributed to the beneficiaries of the trust." No income was in fact there distributed at any time up to and including the years here in question, the petitioner, on March 15, 1945, having sworn that "With respect to the trust

created on November 16, 1938, there has been no distribution of income or other enjoyment of the trust property * * *." Moreover, section 3 of the trust instrument provides that after the settlor's death the trustees may apply to the use of the settlor's wife, and his descendants, so much trust principal as in their discretion they may deem advisable for proper education, care, comfort or support. Such potential invasion of the trust principal makes the value of the gifts of income therefrom unascertainable. *Merchants National Bank of Boston* v. *Commissioner*, 320 U. S. 256; *Estate of John W. Holmes*, 5 T. C. 1289; *Estate of Nathan P. Cutler*, 5 T. C. 1304. There appears no logical distinction between cases involving deduction of charitable bequests, and one, as here, involving gifts, for the question is whether values can be ascertained. The evidence here discloses nothing to indicate the previous standard of living of either the settlor's wife or his descendants, therefore, no standard is supplied, as it has been in some cases, by which to gauge the expression "proper education, care, comfort or support." In short, nothing permits such limitation of invasion of trust corpus as to permit even an estimate of the value of the gifts of income accruing from such trust corpus—in addition to the indefiniteness of amount of income. See also *Margaret A. C. Riter*, 3 T. C. 301.

We therefore conclude that the Commissioner did not err in allowing no exclusions with reference to gifts of income. In fact, in petitioner's gift tax returns for 1938, both original and as amended in 1945, the gifts listed (so far as concerns the trust of November 16, 1938), were of *stock*, and exclusions were deducted therefrom with no reference to gifts of income. It appears, therefore, that the petitioner did not, in the gift tax returns, actually claim exclusions based upon income. Our opinion, however, is not based upon the form of claim in the return, but upon lack of proof of value.

*Decision will be entered for the respondent.*