WILLIAM H. ROBERTSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52307.   Filed May 11, 1956.

*Frank Chapman, Esq.*, for the petitioner.
*Frank V. Moran, Esq.*, for the respondent.

OPINION.

KERN, *Judge:* Respondent's argument in justification of the deficiency in gift tax determined in this case may be paraphrased from his brief as follows: That the value of the interest transferred by petitioner to his wife pursuant to the trust agreement of 1950 could not be determined since the trustee could destroy the income interest of the wife by distributing to her the principal of the trust, and therefore no exclusion is allowable with respect to the gift effected by this transfer; and, further, that since the value of the interest transferred to petitioner's wife cannot be determined, it follows that the remainder interests transferred to third parties under the trust agreement were not "ascertainable at the time of the gift and hence severable from the interest transferred to his spouse * * *," pursuant to the requirements of Regulations 108, section 86.3 (a) (4), and therefore petitioner is not entitled to the gift splitting provisions of section 1000 (f) of the Internal Revenue Code of 1939. It is obvious that the crucial step in respondent's argument is the proposition that it is impossible to value the life interest given the wife under the trust agreement because the corporate trustee is given the power under certain circumstances of making payments to the wife from the trust corpus.

Respondent does not question the valuation of the securities transferred by petitioner in trust nor does he question the methods used or valuations reached in the gift tax return concerning the life interest and remainder interests created by the trust if it should be decided that value of the life interest of petitioner's wife can be ascertained and determined.

Respondent cites and relies on the following cases as supporting the crucial step in his argument: *Sylvia H. Evans*, 17 T. C. 206, affd. 198 F. 2d 435; *Jennie Brody*, 19 T. C. 126; *Merchants Bank* v. *Commissioner*, 320 U. S. 256; *Andrew Geller*, 9 T. C. 484.

In the latter case we pointed out (p. 495) that there was no logical distinction between cases involving gifts and cases involving deduction

of charitable bequests since the question in both is whether values can be ascertained. In *Estate of Nathan P. Cutler*, 5 T. C. 1304, we considered exhaustively the decisions dealing with the problem of whether a power given trustees to invade the principal of a trust for the benefit of the life tenant made the bequest of the remainder to charity so indefinite as to render it impossible to ascertain the value of such bequest. We concluded on principle and authority that the solution of this problem depended on whether the power to invade principal was absolute or was limited by certain standards by which the possibility of invasion could be gauged, and on whether, if there were standards of limitation, there was a likelihood of the exercise of such power as disclosed by the facts. We approach the solution of the problem of the instant case by considering the same pertinent questions.

In the instant case, unlike the cases cited and relied on by respondent, an invasion of the trust corpus for the benefit of the life beneficiary could be made only if the corporate trustee should deem it *"necessary for her maintenance and support" "with due regard to her other sources of funds"* (emphasis supplied), provisions even more stringent than those in *Hartford-Connecticut Trust Co.* v. *Eaton*, 36 F. 2d 710, which were deemed to refer to the amount necessary for the wife's support according to her standards of living, and there is also in the record here evidence as to what were the standards of living of petitioner's wife (cf. *Andrew Geller, supra*, at p. 495). In the instant case we are of the opinion that the power to invade principal is limited by standards by which the possibility of such invasion can be gauged. Cf. *Merchants Bank* v. *Commissioner, supra*, where "Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality" to her and to "consider her 'welfare, comfort and happiness prior to the claims of residuary beneficiaries' * * *'" "brought into the calculation elements of speculation too large to be overcome notwithstanding the widow's previous mode of life was modest and her own resources substantial."

A more troublesome question is whether there is likelihood, as disclosed by the facts of the instant case, that the power to invade principal, limited by these standards, will be exercised. This is not a theoretical problem of possibility but a practical problem of probability, for the solution of which we may turn to "readily ascertainable and reliably predictable facts." We think that we may properly consider the following:

Petitioner's wife was over 60 years old in 1950, with a life expectancy of a little over 14 years. Her husband is approximately a year older and they have lived together happily since their marriage in 1919. Her standards of living are frugal and her tastes are modest.

They live in a home which she owns. Her husband, whose life expectancy is only a little less than hers, is a successful business man whose annual income since 1949 has been in excess of $50,000. He has always supported his wife as is his duty under Connecticut law. The net value of his assets at the time of the trial herein was approximately $275,000. Among his assets was stock of the prosperous company of which he was president and which paid dividends of over $10,000 a year, a sum considerably in excess of the joint living expenses of petitioner and his wife. His wife owned not only her home worth not less than $40,000, but also securities worth not less than $15,000. She was the beneficiary of her husband's life insurance in the amount of $35,000. Under her husband's will she is entitled to the income of all his estate for life and to so much of the principal as the trustees may deem necessary or desirable for her comfortable maintenance, support, benefit, and welfare.[1]

Of course there is a legal possibility, as respondent points out, that petitioner may change the beneficiary named in his life insurance policies and also make a new will disinheriting his wife. However, having heard the petitioner testify, and considering the other facts of record here, we consider such action on his part as theoretically possible but extremely improbable. And even if the extremely improbable occurred, his wife, upon his death, could claim a third of his estate under the law. It is also possible that petitioner's assets will become worthless. By the same token it is possible that the securities which are subject to the gift in trust here will become worthless. However, that possibility has not prevented the valuation of those securities for gift tax purposes at $59,388. It is a truism to say that all future events in human life are subject to uncertainty except death and taxes. However, we must exercise our best judgment as to the likelihood of the occurrence of those events as of certain times, in this case as of the time of the making of the gifts in question.

Bearing in mind all these facts and the provisions of the trust agreement which limit the discretion of the corporate trustee[2] to invade the trust principal for the wife's maintenance and support "with due regard to her other sources of funds," we conclude that there is no likelihood of the exercise of this power as disclosed by the facts of the instant case. See *Estate of Edwin E. Jack*, 6 T. C. 241; *Estate of Anna Finley Kenny*, 11 T. C. 857.

We are therefore of the opinion that the life interest given to petitioner's wife under the trust agreement of 1950 can be valued,

---

[1] Note the difference between this broad language and the stringent limitations placed upon the power to invade corpus in the Trust agreement of 1950.

[2] A New England corporate trustee characterized by the dissenting opinion in *Merchants Bank* v. *Commissioner, supra,* as frugal and conservative.

and that respondent's determination of deficiency, which was based upon the view that this life interest could not be valued, was erroneous.

*Decision will be entered for petitioner.*