Max Kass v. Commissioner.
Kass v. Commissioner
Docket No. 61965.
United States Tax Court
T.C. Memo 1957-227; 1957 Tax Ct. Memo LEXIS 22; 16 T.C.M. (CCH) 1035; T.C.M. (RIA) 57227; December 12, 1957
*22 Petitioner made a gift in trust of which petitioner's spouse was a life beneficiary, the trustees having the power to invade principal for the spouse's "general welfare". Held, the interests of third parties under the trust instrument were not "ascertainable at the time of the gift, and hence severable from the interest transferred to his spouse," as provided by Regulations 108, sec. 86.3a (a)(4), and petitioner is not entitled to the giftsplitting benefits of section 1000(f) of the Internal Revenue Code of 1939. Rowland W. Lassen, Esq., 39 Broadway, New York, N. Y., for the petitioner. A. Jesse Duke, Jr., Esq., for the respondent. TRAIN
Memorandum Opinion TRAIN, Judge: Respondent determined a deficiency of $1,620 in the gift tax of the petitioner for the year 1952. The only issue is *23 whether the interests of third parties under a certain gift in trust of which petitioner's spouse is the life beneficiary were "ascertainable at the time of the gift, and hence severable from the interest transferred to his spouse," as provided by Treasury Regulations 108, sec. 86.3a (a)(4), so that petitioner is entitled to the giftsplitting benefits of section 1000(f) of the Internal Revenue Code of 1939. All the facts have been stipulated and are hereby found as stipulated. [Findings of Fact] The petitioner is an individual and a resident of New York. On January 5, 1952, the petitioner made a gift in trust of 5,000 Class A shares of Universal Leather Goods, Ltd., a British corporation, in accordance with a trust instrument executed on the same day. The 5,000 shares has a value of $54,000 at the time of the transfer. On March 15, 1953, the petitioner filed a timely gift tax return with the district director for the third district of New York, reporting the above gift and, with her consent, splitting the gift with his wife Marie Kass. On the same day, she filed a gift tax return reporting one-half of the gift. Both the petitioner and his wife are citizens and residents *24 of the United States and were such on January 5, 1952. Marie Kass was 70 years old on January 5, 1952. On January 1, 1952, she was the owner of securities, independent of the trust, with a total market value of approximately $132,000. During the years 1951 through 1954, Marie Kass reported for Federal income tax purposes the following income from dividends, which does not include the income distributed to her under the trust in question: 1951
$6,100.61
1952
4,746.69
1953
6,531.94
1954
7,177.03
During the years 1952, 1953, 1954 and 1955, Marie Kass reported on her joint Federal income tax return filed together with the petitioner the following net income (after British taxes) from distributions under the trust in question: 1952
None
1953
$9,236.77
1954
3,732.32
1955
3,953.56
No invasion or distribution of the trust corpus has occurred since the creation of the trust. The trustees do and continue to hold in trust the original 5,000 shares of stock. The trust instrument provided that the net income should be paid to Marie Kass for life. Upon her death, it was provided that the trust should be divided into three equal trusts, each of *25 which had income beneficiaries and remainders over. The trust instrument provided further: "THIRD: The Trustees, in their absolute discretion, shall have the power to pay from time to time, out of the principal of any Trust, such sum or sums to any income beneficiary of such Trust as the Trustees may deem necessary or advisable for the general welfare of such beneficiary. In the exercise of this power, the Trustees may, in their discretion, exhaust the principal of any Trust, in which case, such Trust shall terminate." [Opinion] The petitioner contends that "general welfare" in "Third" of the trust instrument provides a fixed standard limiting the power to invade the principal, and that, in light of the facts, the probability of exercise of the power is so low as to be neglible. The respondent maintains that no such standard is provided and that, even if "general welfare" provides a sufficient standard of limitation, the facts are not sufficient to enable one to ascertain the probability of the exercise of the power. In short, the respondent contends that the interests of third parties were not ascertainable at the time of the gift. Regulations 108, sec. 86.3a (a)(4), supra. *26 On the record before us, we must sustain the respondent's position. We shall assume, without deciding, that the term "general welfare" is equivalent to a provision for maintaining the income beneficiary according to her usual standard of living. See Blodget v. Delaney, 201 Fed. (2d) 589 (C.A. 1, 1953); In re Mayer's Will, 59 N.Y.S. (2d) 558 (1945); Commissioner v. Robertson's Estate, 141 Fed. (2d) 855 (C.A. 4, 1944), affirming a memorandum opinion of this Court dated September 12, 1942. However, the remoteness of the possibility of the power being exercised is a matter of practicability and depends upon the factual circumstances as well as the language limiting the power. William H. Robertson, 26 T.C. 246 (1956); Commissioner v. Robertson's estate, supra; Commissioner v. Wells Fargo Bank & Union Trust Co., 145 Fed. (2d) 130 (C.A. 9, 1944), affirming a memorandum opinion of this Court dated May 20, 1943 [2 TCM 113]. Petitioner has introduced no evidence of whether Marie Kass was supported by her husband and, if that is the case, his annual income. Likewise, the record is void of any evidence of Marie's *27 annual living expenses. Nor does the record show whether she lived frugally or extravagantly. We know that she owned securities worth about $132,000 at the time of the gift, and we also know the amount of her annual income from dividends and from the trust. Finally, we know her age. Although relevant, these facts are here without any helpful significance in the absence of evidence as to her normal standard of living. Resources which might be more than adequate in the circumstances of one individual may be totally inadequate in those of another. The only evidence tending to show that her income was adequate is the fact that the trust principal has not been invaded for her benefit, but this fact was not ascertainable at the time of the gift, Regulations 108, sec. 86.3a (a)(4), supra. Cf. Regulations 105, sec. 81.44(a). [1]William H. Robertson, supra; Estate of Charles H. Wiggin, 3 T.C. 464 (1944); Commissioner v. Wells Fargo Bank & Union Trust Co., supra; Ithaca Trust Co., 279 U.S. 151 (1929), reversing 64 Ct. Cls. 686 (1928). But cf. Estate of Horace G. Wetherill, 4 T.C. 678 (1945). As in Andrew Geller, 9 T.C. 484 (1947), *28 the taxpayer in the instant case has failed to prove sufficient facts by which to measure the probability of the exercise of the power. The cases relied upon by the petitioner are distinguishable in that further facts were found in those cases not present here which were necessary to prove the remoteness of the possibility of invasion. See Ithaca Trust Co., supra; William H. Robertson, supra; Commissioner v. Robertson's Estate, supra; Estate of Horace G. Wetherill, supra. Petitioner has conceded the only other issue, involving the disallowance of the annual gift exclusion of $3,000. We hold that the petitioner has failed to prove that the interests of third parties were ascertainable at the time of the gift, and hence severable from *29 that of the wife. Therefore, the respondent has properly disallowed petitioner the gift-splitting benefits of section 1000(f). Decision will be entered for the Respondent. Footnotes
1. Regulations 105, sec. 81.44. Transfers for public, charitable, religious, etc., uses. - (a) * * *
If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently ascertainable, and hence severable from the interest in favor of the private use. * * *↩