ARTHUR SORIN AND HENRIETTA A. SORIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56400.   Filed February 26, 1958.

*Mason G. Kassel, Esq.,* and *Ralph L. Concannon, Esq.,* for the petitioners.

*Charles B. Markham, Esq.,* and *Martin D. Cohen, Esq.,* for the respondent.

## OPINION.

OPPER, *Judge:* Although other matters are argued by each party, it seems evident that the crux of the present controversy is one of burden of proof. If the facts bringing petitioners' situation within section 117 (m) as a "collapsible corporation"[1] must be shown by respondent, the inferences as to several of the essential conditions of

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.
   (m) COLLAPSIBLE CORPORATIONS.—
     (1) TREATMENT OF GAIN TO SHAREHOLDERS.—Gain from the sale or exchange (whether in liquidation or otherwise) of stock of a collapsible corporation, to the extent that it would be considered (but for the provisions of this subsection) as gain from the sale or exchange of a capital asset held for more than 6 months, shall, except as provided in

that section are too weak to permit him to prevail. If, on the other hand, the presumptive correctness of respondent's determination places upon petitioners the onus of proving the absence of any one or more of the operative provisions, we must hold, under the circumstances concededly present here, that petitioners have failed to sustain that burden. *Raymond G. Burge*, 28 T. C. 246, on appeal (C. A. 4); *J. D. Abbott*, 28 T. C. 795, on appeal (C A. 3).

This central issue arises as follows: Respondent determined in the deficiency notice that the distribution in controversy "is fully taxable to you at ordinary income tax rates under the provisions of the Internal Revenue Code of 1939." Petitioners contend that this is essentially identical with what happened in *Thomas Wilson*, 25 T. C. 1058, where the deficiency determined was that the amount received (p. 1062) "was ordinary income under section 22 (a)," I. R. C. 1939, and later resort to section 117 (m) was held to place the burden on respondent. We think the situations are radically different and that

paragraph (3), be considered as gain from the sale or exchange of property which is not a capital asset.

(2) DEFINITIONS.—

(A) For the purposes of this subsection, the term "collapsible corporation" means a corporation formed or availed of principally for the manufacture, construction, or production of property, or for the holding of stock in a corporation so formed or availed of, with a view to—

(i) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, prior to the realization by the corporation manufacturing, constructing, or producing the property of a substantial part of the net income to be derived from such property, and

(ii) the realization by such shareholders of gain attributable to such property.

(B) For the purposes of subparagraph (A), a corporation shall be deemed to have manufactured, constructed, or produced property, if—

(i) it engaged in the manufacture, construction, or production of such property to any extent,

(ii) it holds property having a basis determined, in whole or in part, by reference to the cost of such property in the hands of a person who manufactured, constructed, or produced the property, or

(iii) it holds property having a basis determined, in whole or in part, by reference to the cost of property manufactured, constructed, or produced by the corporation.

(3) LIMITATIONS ON APPLICATION OF SUBSECTION.—In the case of gain realized by a shareholder upon his stock in a collapsible corporation—

(A) this subsection shall not apply unless, at any time after the commencement of the manufacture, construction, or production of the property, such shareholder (1) owned (or was considered as owning) more than 10 per centum in value of the outstanding stock of the corporation, or (ii) owned stock which was considered as owned at such time by another shareholder who then owned (or was considered as owning) more than 10 per centum in value of the outstanding stock of the corporation;

(B) this subsection shall not apply to the gain recognized during a taxable year unless more than 70 per centum of such gain is attributable to the property so manufactured, constructed, or produced; and

(C) this subsection shall not apply to gain realized after the expiration of three years following the completion of such manufacture, construction, or production. For purposes of subparagraph (A), the ownership of stock shall be determined in accordance with the rules prescribed by paragraphs (1), (2), (3), (5), and (6) of section 503 (a), except that, in addition to the persons prescribed by paragraph (2) of that section, the family of an individual shall include the spouses of that individual's brothers and sisters (whether by the whole or half blood) and the spouses of that individual's lineal descendants.

*W. H. Weaver*, 25 T. C. 1067, 1085, decided on authority of *Thomas Wilson, supra*, and on which petitioners also rely, in fact, more nearly supports respondent's position.

It is one thing for respondent to pinpoint the basis of his determination as he did in the *Wilson* and *Weaver* cases. In that situation it is not reasonable to permit him, without notice, to rely on some different and previously undisclosed ground. *Helvering* v. *Wood*, 309 U. S. 344. He is required under those circumstances to amend his answer sufficiently in advance of the trial if he wishes to raise a new issue. Because the original determination is not broad enough to include the new ground, its presumptive correctness does not then extend to such new matter, which he is required to raise affirmatively in his answer. Under the Tax Court rules, the burden of proof as to it is expressly placed upon respondent. Rule 32, Tax Court Rules of Practice (Jan. 15, 1957).

But when the determination is made in indefinite and general terms, and is not inconsistent with some position necessarily implicit in the determination itself, the situation is quite different. "The petitioner may not, without an expressly pleaded admission or stipulation, treat the notice as an official acquiescence by the Commissioner in all petitioner's propositions as to this item except those expressly determined adversely to him." *Edgar M. Carnrick*, 21 B. T. A. 12, 21. See also *Hilbert L. Bair*, 16 T. C. 90, 98, affd. (C. A. 2) 199 F. 2d 589; *Millar Brainard*, 7 T. C. 1180; *Andrew Geller*, 9 T. C. 484, 491; *Raoul H. Fleischmann*, 40 B. T. A. 672, 682.

What petitioners may do in these circumstances, we need not now determine. It may be that if respondent's position is so nebulous that a petitioner cannot adequately proceed, he may in some fashion compel respondent to a further disclosure. Whether this would ordinarily be by amended answer is extremely doubtful. But, in any event, such a step prior to trial was neither taken nor apparently considered necessary. What petitioners did was to request at the opening of the trial that respondent be required in effect to elect the ground upon which he expected to rely.[2] He was not asked to and

---

[2] While petitioners did contend at the opening of the trial that any reliance on section 117 (m) would be "a change from the deficiency notice which is not based on the applicability of Section 117 (m)," there was no demand that an amended answer be filed. The request was merely that "the Court * * * rule that the Respondent's Counsel be required to state in his opening statement the theory upon which he is proceeding; and if he now relies upon Section 117 (m), that the Court hold that he has the burden of proving that that section is applicable."

In reply respondent's counsel stated that petitioner "is correct in his assumption * * * that we are relying on Section 117 (m). I feel that the language set forth in the statutory notice of deficiency is sufficiently broad to cover the position we are taking under 117 (m) and therefore Petitioner is not entitled to have the burden of proof shift to the Respondent."

No ruling was made at the trial as to who had the burden of proof, and apparently respondent's statement that he intended to rely on section 117 (m) satisfied petitioners. At any rate, any burden cast upon respondent because prior to the trial he has raised new matter in his answer cannot be invoked here.

did not amend his answer at that time,[3] and it is reasonable to assume that such a request would have been denied. But it would, in any event, have crystallized the situation at that timely moment and not have left the issue of burden to its present contest on the briefs.

Nor can it be successfully argued that the language employed in the deficiency notice directly or by necessary inference excluded the claim upon which at the trial respondent elected to proceed. Not only was there an absence of reference in the notice to any specific section as there was in the *Wilson* and *Weaver* cases, but the language used was peculiarly appropriate to a controversy under section 117 (m). It was not that this was ordinary income as would be the case with sections 22 (a) or 115 (a), but merely that it was "taxable at ordinary income tax rates." [4] This is entirely consistent with section 117 (m). And while the distribution in its entirety was the subject of the deficiency, this would be as true under section 117 (m) if the stockholder's basis was zero as if the total amount was ordinary income under sections 22 (a) or 115 (a), or both. The provision that section 117 (m) applies to "gain" would require taxation of the entire receipt if the basis is zero. And nothing in that section or anywhere else relieves a taxpayer of the obligation of proving his basis or prevents respondent from assuming that the basis is zero in the absence of a contrary showing. See *Helvering* v. *Gowran*, 302 U. S. 238.

When the time came for trial the missing evidence had still not been produced and all that the parties stipulated was that the schedule attached to the return employed $100 as the basis applicable to the

---

[3] An amended answer was in fact filed, but long after the trial and presumably not for any purpose connected with this point:

"(1) Admits the allegations contained in subparagraph (1) of paragraph 5 of the petition [which was '(1) The sum of $50,000.00 received by the Petitioner, HENRIETTA A. SORIN from GARDEN HILLS, INC. was not a dividend within the definition of Section 115 (a) of the Internal Revenue Code of 1939; neither was it a distribution out of increase in the value of any property which accrued before March 1, 1913' and which was denied in the original answer].

"(m) Denies the allegations contained in subparagraph (m) of paragraph 5 of the petition.

"(n) Admits that the aforesaid $50,000.00 corporate cash distribution constituted 'other distributions from capital,' the amount of which distribution should be applied against and reduce the adjusted basis of the stock in the hands of said Petitioner. Denies the remaining allegations of subparagraph (n) of paragraph 5 of the petition.

"(o) and (p) Denies the allegations of subparargraphs (o) and (p) of paragraph 5 of the petition."

The third statement is a logical progression from the first. It is "other distributions from capital" because it is now admittedly not a dividend, there being no corporate earnings and profits.

[4] The similarity to ordinary income is in fact implicit in section 117 (m). In *Thomas Wilson*, 25 T. C. 1058, 1066, we said that the concept of this section was devised in order "to foreclose the use of certain types of corporations as a means of converting ordinary income into capital gain."

$50,000 distribution.[5]   But this did not have to be assumed by respondent as being the true basis prior to the issuance of the deficiency notice. It follows that taxation of the entire distribution "at ordinary income tax rates" was in no way inconsistent [6] with the formula of section 117 (m).

It is not without significance that the deficiency notices in both the *Wilson* and *Weaver* cases included years prior to 1950, the first one to which section 117 (m) was applicable.   It was accordingly impossible for respondent to base his deficiency notices in those cases on that section as to all the years involved.   But in this case only 1950 is covered by the notice and it would be most remarkable if section 117 (m) were not in fact a potential ground for its issuance.

We conclude that respondent was entitled to rely on section 117 (m) under the terms of the original deficiency notice, that no new matter was asserted when he proposed at the trial to base his contention on that section, and that accordingly the burden of proving any necessary facts to negate the application of section 117 (m) was required to be borne by petitioners, and that they have failed to do so.   See *Raymond G. Burge, supra; J. D. Abbott, supra.*

We have concluded that the burden which petitioners are thus compelled to carry has not been borne because the requirements for the application of section 117 (m) have not been shown to be lacking nor the limitations to apply, both in general and particularly with respect to the controversies that are expressly argued.   Petitioners have not shown that the distribution was not made "with a view to" the described purpose, *Raymond G. Burge, supra* at 259; *J. D. Abbott, supra* at 806; see *Edward Weil*, 28 T. C. 809, on appeal (C. A. 2) ; nor that it was not attributable to the constructed property, *Raymond G. Burge, supra* at 262; *J. D. Abbott, supra* at 807; nor, on the present record, that less than 70 per cent or, in fact, anything less than all of the distribution was so attributable, *Raymond G. Burge,*

---

[5] "In their joint income tax return for 1950, the petitioners treated the distribution received by petitioner, Henrietta A. Sorin, in the amount of $50,000.00 as a distribution under Section 115 (d) of the Internal Revenue Code.   Schedule D of the return—the schedule of gains and losses from sales or exchanges of property—reported as net long-term capital gain the amount of $49,900.00, said sum being the difference between the distribution of $50,000.00 and the $100.00 cost basis of the stock upon which the distribution was made."

[6] Petitioners also claim that the statement in the deficiency notice that "the distribution * * * does not constitute a return of capital or gain from the sale or exchange of a capital asset" has a bearing on the respondent's intention to rely on section 117 (m).   But these words were used in connection with respondent's action in giving petitioners credit for the capital gain they had reported.   This item was eliminated from income because the stock of a collapsible corporation is not a "capital asset," and gain connected with it is not capital gain.   Of course, whether or not it was a return of capital would depend on basis.

Incidentally, respondent did not even here deny that the income was from the sale or exchange of "property" as petitioners mistakenly assert.   The "capital asset" concept is precisely that of section 117 (m).

*supra* at 262; *J. D. Abbott*, *supra* at 806, 808; nor that it was made after the 3-year period.

Such credible evidence as there is generally tends to sustain respondent, cf. *Raymond G. Burge*, *supra* at 262, but we do not and need not say that with the burden on him, he would prevail. It suffices that on this record we are unable to find that with respect to any of the issues petitioners have discharged their obligation of proving their case.

While the question of basis still seems to be in issue, it is almost *de minimis*, only $100 being involved. Without assuming that the stipulation alone would be sufficient to sustain petitioners' burden, there are other facts in the record, including the par value of the stock. The presumption under local law would require that the stock be issued to petitioner Henrietta for money, labor done, or property actually received. Sec. 69, N. Y. Stock Corp. Law. At least, if there were any suggestion that petitioners or the corporation had proceeded unlawfully, the burden of going forward would be upon respondent. *Washington Post Co.*, 10 B. T. A. 1077; *W. H. Weaver*, *supra* at 1081. We have accordingly found as a fact that the basis of the stock upon which the distribution was made was that claimed by petitioners.

*Decision will be entered under Rule 50.*