Stanley L. Wang v. Commissioner.
Wang v. Commissioner
Docket No. 4328-69.
United States Tax Court
T.C. Memo 1972-143; 1972 Tax Ct. Memo LEXIS 117; 31 T.C.M. (CCH) 719; T.C.M. (RIA) 72143; June 29, 1972, Filed Frederick J. Martin, 175 Main, White Plains, N. Y., for the petitioner. Marlene Gross, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in gift tax against the petitioner for the year 1963 in the amount of $5,207.73. The issues raised by the pleadings are whether the remainder interests in a trust created by petitioner on December 20, 1963, were subject to gift splitting under section 2513 of the Internal Revenue Code *118 of 1954, or, in the alternative, whether an increased marital deduction is allowable under section 2523 of the Code for such gifts. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioner is an individual whose legal residence at the time of the filing of the petition herein was 29 Park Circle, White Plains, New York. He filed a gift tax return for the calendar year 1963 with the district director of internal revenue, New York, New York. On December 20, 1963, petitioner executed a trust agreement. On the same day and at the same time petitioner executed a last will and testament. At that time the petitioner and his wife, Anna S. Wang, had two daughters, both of whom were married and had three children each. The December 20, 1963 trust adjustment established an irrevocable trust for the lives of petitioner and his wife, and for the lives of the issue of the petitioner living at the 720 date of the instrument plus 21 years, unless sooner terminated as provided in the instrument. The trustees under the trust were the petitioner's wife, Anna S. Wang, and his nephew, Allen H. Adams. Simultaneously with the execution *119 of the trust agreement, the petitioner executed absolute assignments to the trust of two life insurance policies on his life. He also transferred to the trustees real property known as 116 MacDougal Street. The total value of the items placed in trust was $76,141.73. The trust instrument provided that during the joint lives of the donor and his wife, Anna S. Wang, the trustees should pay over the net income of the trust at least semi-annually to or for the benefit of Anna S. Wang; that upon the death of the donor, if the donor's wife should survive him, the trustees should set apart and segregate as a separate portion of the trust fund a "Fund A." Such Fund A was to consist of an amount equal to the difference between one-half of the value of the donor's adjusted gross estate and the value of all property passing to petitioner's wife by reason of the provisions of petitioner's will, or by operation of law, or as joint tenants with right of survivorship, or otherwise, and "with respect to which a marital deduction is allowable to his said estate under the provisions of the United States Internal Revenue Code." It was provided that in funding Fund A, the trustees should use "only such *120 assets of the trust as shall be required to be included in the Donor's gross estate for Federal Estate Tax purposes and which qualify as deductible for the marital deduction." It was provided that the trustees should pay or apply all the net income from Fund A to or for the benefit of the wife during her lifetime. The wife had a noncumulative right, in her absolute and uncontrolled discretion, to withdraw $10,000 per year out of the principal of Fund A for any purpose whatsoever. She also had the power to appoint, by her last will and testament, the entire principal of Fund A then remaining in the hands of the trustees to her estate, to any person, or to any trust. It was provided that upon the death of the donor's wife any principal of Fund A not so appointed by the wife should be transferred to and be administered as part of "Fund B." The trustee or trustees (other than the donor's wife) were authorized at any time and from time to time to pay to, or apply for the benefit of, the wife so much of the principal of Fund A as they, in their sole and uncontrolled discretion, deemed "necessary or advisable for her proper care, support, and health or in the event of any emergency affecting *121 the Donor's said wife." Fund B was to consist of all remaining assets of the trust as originally constituted (and as might be thereafter supplemented) after establishing Fund A (if the donor's wife survived him). If the wife did not survive the donor, all the assets, however received by the trustees, were to constitute Fund B. If the wife survived the donor, the net income of Fund B was to be paid to or for her benefit at least semi-annually during her lifetime. The trust instrument provided in part as follows: The Trustees (Trustee or Trustees) (Other than the Donor's wife, ANNA S. WANG) are authorized at any time and from time to time to pay to or apply for the benefit of the Donor's wife, ANNA S. WANG, so much of the principal of Fund A as such Trustees, exclusive of the Donor's wife, shall, in their sole and uncontrolled discretion, deem necessary or advisable for her proper care, support and health or in the event of any emergency affecting the Donor's said wife. If at any time the principal of Fund A shall be exhausted, or shall be insufficient, the Trustees, other than the Donor's wife may thereafter, at any time and from time to time in thir sole and absolute discretion, *122 pay to or apply for the benefit of the Donor's wife so much of the principal of Fund B as such Trustees (excepting the Donor's wife) in their sole and uncontrolled discretion may deem necessary or advisable for her proper support, care and health, or for any emergency affecting the Donor's said wife or her family, first having regard to her other sources of income and other assets as certified to such Trustees by her. Any sums paid to the Donor's said wife pursuant to this provision shall be absolute and free from any trust, and the Trustees' decision to make such payment shall be absolute and binding upon all persons interested under this agreement. It was provided that upon the death of the wife the trustees should divide the then principal of the trust into equal shares (each share to be a separate trust), one for each child of the donor then living and one share for the issue taken collectively of any child of the donor who might have predeceased 721 leaving issue then surviving, in the latter case the net income to be paid to or for the benefit of such issue in equal shares per stirpes. With respect to any share held for a living child of the donor the trustees were to pay *123 the net income to or for the benefit of such child for life, and upon her death to or for the benefit of the then living issue of such child in equal shares per stirpes. Such trusts were to continue during the lives of such issue as were living on December 20, 1963 plus 21 years or until all the children of a deceased child attained the age of 35 years or sooner died, whichever event might sooner occur. Thereupon the trustees were to pay over the then remaining principal to the then living issue of a deceased child in equal shares per stirpes. Under his last will and testament executed December 20, 1963, petitioner left to his wife, if she should survive him, his personal and household effects and any real property used as the principal residence of him and his wife at the time of his death. The rest of his estate was left to his trustees under the December 20, 1963 trust agreement to "hold and administer the same in all respects as a part of the principal of the respective trust funds therein created." The last will and testament executed December 20, 1963 superseded petitioner's last will and testament executed May 15, 1963. Under his last will and testament executed May 15, 1963, petitioner *124 left to his wife, if she survived him, his personal and household effects and his principal residence at the time of his death. The rest of his estate was given in trust to his trustees, Anna S. Wang and Allen H. Adams, to be divided into a marital deduction trust and into a nonmarital deduction trust. The beneficiaries, powers of invasion, and standards of invasion were the same as those of the trust agreement executed December 20, 1963. Other than a gift of a one-half interest in his residence, petitioner had made no taxable gifts prior to December 20, 1963. At the time petitioner executed the trust agreement and his last will and testament, he and his attorney drew up an estimate of his property holdings which totaled approximately $587,000. Petitioner was born on December 26, 1888, and his wife Anna S. Wang on April 22, 1893. Petitioner's age on his birthday nearest to December 20, 1963, would be 75; his wife's age on her birthday nearest to December 20, 1963, would be 71. Based on U.S. Life Table 38, in effect on December 20, 1963, the life expectancy of a person aged 75 was 7.58 years and the life expectancy of a person aged 71 was 9.45 years. Based on such table the *125 probability that a person aged 75 would die within three years and be survived by a person aged 71 is 0.207 or 20.7 percent. The petitioner was living at the time of the trial herein in 1971. His wife died in 1967. In his gift tax return for the calendar year 1963 the petitioner and his wife consented to have gifts made by either of them to third parties considered as having been made one-half by each of them. In such return the petitioner reported a value of $71,141.73 for the property transferred to the trust created on December 20, 1963. Of this he reported $20,312.39 at attributable to the life interest of his wife and $50,829.34 as attributable to the remainder interest transferred in trust for third parties. He treated one-half of the latter amount, or $25,414.67, as the portion of split-gift attributable to his wife, leaving a balance of $45,727.06 as the amount of gifts attributable to him as a result of the transfers to the trust. In the notice of deficiency the respondent determined that the value of the property transferred to the trust was $10,000 more than reported by the petitioner, but by stipulation now concedes that the value reported by the petitioner was correct. *126 In the notice he determined that the portion of the gift in trust "to be reported by the spouse under section 2513 Internal Revenue Code of 1954 is unascertainable and is therefore not deductible." Opinion The issue to be decided is whether the gifts made by the petitioner consisting of the remainder interest in certain property placed by the petitioner in trust is to be considered as having been made to the extent of one-half by his wife under section 2513(a) of the Internal Revenue Code of 1954, [1] and therefore excludable by him 722 from his taxable gifts made in the calendar year of 1963. Where, as here, one spouse transfers property in part to his spouse and in part to third parties, the consent is effective with respect to the interest transferred to third parties only insofar as such interest is ascertainable at the time of the gift and hence severable from the interest transferred to his spouse. Section 25.2513-1 (b) (4) of the Gift Tax Regulations. *127 It has been held that in determining whether such interest is ascertainable as of the time of gift, there should be applied the principles established in cases where it is necessary to determine whether a power given to a trustee to invade the principal of a trust for the benefit of a life tenant renders the bequest of the remainder to charity so indefinite as to render it impossible to ascertain the value of such bequest for purposes of a charitable deduction. Andrew Geller, 9 T.C. 484, and William H. Robertson, 26 T.C. 246. In such cases the answer depends upon whether the power to invade the principal is limited by ascertainable standards by which the possibility of invasion can be measured or stated in definite terms of money. Ithaca Trust Co. v. United States, 279 U.S. 151; Merchants National Bank of Boston v. Commissioner, 320 U.S. 256; and Seubert v. Shaughnessy, (C.A. 2) 233 F. 2d 134. It has been held that an ascertainable *128 standard exists when the language of the will or trust allows invasion of the principal only to the extent necessary to maintain the life tenant's present standard of living. Thus, words such as "comfort and support," "maintenance and support," "comfort and welfare," "proper care, support and maintenance," and "support, maintenance, welfare and comfort" have been held to constitute an ascertainable standard based upon the life tenant's present standard of living. See Estate of Anna Finley Kenny, 11 @T.C. 857; William H. Robertson, 26 T.C. 246; Blodgett v. Delaney, (C.A. 1) 201 F. 2d 589; Lincoln Rochester Trust Co. v. Commissioner, (C.A. 2) 181 F. 2d 424; and Estate of Mary Cotton Wood, 39 T.C. 919. However, it has been held that an ascertainable standard is not provided where there are used such expressions as "pleasure, comfort and welfare" ( Henslee v. Union Planters Bank, 335 U.S. 595); "her comfortable support and maintenance and for any other reasonable requirement" ( State Street Bank and Trust Co. v. United States, (C.A. 1) 313 F. 2d 29); "best interest * * * during illness or emergency of any *129 kind" ( Estate of Bartlett v. Smith, (E.D.C. Pa.) 153 F. Supp. 675); and "illness, accident or other unforeseen emergency" ( DeCastro's Estate v. Commissioner, (C.A. 2) 155 F. 2d 254, affirming a Memorandum Opinion of this Court, certiorari denied 329 U.S. 727). In the instant case the trust instrument provided that if at any time the principal of Fund A (the marital deduction trust) should be exhausted or should be insufficient, the trustees might thereafter in their sole and absolute discretion pay to or apply for the benefit of the wife so much of the principal of Fund B (the nonmarital deduction trust) as they in their sole and uncontrolled discretion might deem necessary or advisable "for her proper support, care and health, or for any emergency affecting the Donor's said wife or her family, first having regard to her other sources of income and other assets as certified to such Trustees by her." We think that this language does not constitute an ascertainable standard. The "emergency" is not limited whatsoever. It is broad enough to cover any type of emergency which might affect her or her family. It would seem that by this language *130 the petitioner had something more in mind than merely ensuring the preservation of his wife's customary standard of living. Cf. Lincoln Rochester Trust Company v. McGowan, (C.A. 2) 217 F. 2d 287. It should be observed that it is well settled that proof of extrinsic circumstances cannot supply the necessary element of ascertainability if the wording of the instrument does not furnish the basis for an objective standard. Seubert v. Shaughnessy, supra. We accordingly hold that since the trust instrument itself does not provide a standard by which the interest which the donor transferred to the third parties is 723 ascertainable and hence severable from the interest which he transferred to his spouse, the gift made to such third parties may not be considered as having been made to the extent of one-half by his wife. In the view we have taken, it is unnecessary to consider the respondent's additional contention that the gift made to the remaindermen is unascertainable for the reason that the gift might eventually be considered as a gift in contemplation of *131 death with the result that the subject of the gift might, under the terms of the trust, be transferred to Fund A (the marital deduction trust). In his petition the petitioner made the claim, in the alternative, that if the claimed deduction for split gifts to third parties is disallowed as "unascertainable" then he should be entitled to an increased marital deduction under section 2523 of the Code [2] for such gifts. However, as we read the petitioner's briefs, he apparently does not press this contention. In any event, it is clear that the petitioner is not entitled to a gift tax marital deduction on account of any of the property covered by the December 20, 1963, trust because any interest transferred to his wife would terminate on the occurrence of an event or contingency, within the meaning of section 2523(b) of the Code. *132 Decision will be entered under Rule 50. Footnotes
1. SEC. 2513. GIFT BY HUSBAND OR WIFE TO THIRD PARTY. (a) Considered as Made One-Half by Each. - (1) In general. - A gift made by one spouse to any person other than his spouse shall, for the purposes of this chapter, be considered as made one-half by him and one-half by his spouse * * * (2) Consent of both spouses. - Paragraph (1) shall apply only if both spouses have signified (under the regulations provided for in subsection (b)) their consent to the application of paragraph (1) in the case of all such gifts made during the calendar year by either while married to the other.↩
2. Section 2523 provides in part as follows: (a) In General. - Where a donor who is a citizen or resident transfers during the calendar year by gift an interest in property to a donee who at the time of the gift is the donor's spouse, there shall be allowed as a deduction in computing taxable gifts for the calendar year an amount with respect to such interest equal to one-half of its value. (b) Life Estate or Other Terminable Interest. - Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, such interest transferred to the spouse will terminate or fail, no deduction shall be allowed with respect to such interest - (1) if the donor retains in himself, or transfers or has transferred (for less than an adequate and full consideration in money or money's worth) to any person other than such donee spouse (or the estate of such spouse), an interest in such property, and if by reason of such retention or transfer the donor (or his heirs or assigns) or such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest transferred to the donee spouse; * * *↩